**In re Charles Edward CAIN, Debtor. (Two cases)**

**Charles Edward CAIN, Plaintiff,**

v.

**Phyllis ISENHOWER, John Philip Wilson, Defendants.**

**Phyllis ISENHOWER and Amanda Danielle Isenhower, by her Guardian and Next Friend, Phyllis Isenhower, Plaintiff,**

v.

**Charles Edward CAIN, Defendant.**

**Bankruptcy No. 82–10063.**
**Adv. Nos. 82–1056, 82–1059.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

April 25, 1983.

Robert E. Ross, Adair, Perry, Beers, Mallers & Larmore, Fort Wayne, Ind., for Charles Edward Cain.

John P. Wilson, Wilson & Limeberry, Greenwood, Ind., for Phyllis Isenhower and Amanda Danielle Isenhower.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

In the above bankruptcy case, a voluntary chapter 7, debtor Charles Edward Cain filed a Complaint to Determine Dischargeability of a Debt against defendants Phyllis

1. See n. 3 and accompanying text infra.

2. Cain, plaintiff in 1056 and defendant in 1059, is aligned against the interests of Phyllis Isenhower, Amanda Isenhower, and John P. Wilson, the respective defendants/plaintiffs. We

Isenhower and John Philip Wilson on March 25, 1982, initiating Adversary Proceeding 1056. On March 30, 1982, Phyllis Isenhower and Amanda Danielle Isenhower, by her Guardian and Next Friend, Phyllis Isenhower, filed a Complaint for Determination of Nondischargeability of Debt against Charles Edward Cain (hereinafter Cain), initiating Adversary Proceeding 1059. Both proceedings involve the same debt.[1] On May 4, 1982, Cain, as plaintiff in proceeding 1056, filed a Motion for Summary Judgment. Phyllis Isenhower and Wilson filed a Cross Motion for Summary Judgment in the same proceeding on June 28, 1982. As the two proceedings involve the same set of facts and questions of law, which are summarized in the cross motions for summary judgment, we will consider them jointly. There are no disputed questions of fact in this case: the parties[2] differ only on their interpretation of the applicable law, 11 U.S.C. § 523(a)(5). Each side has fully presented its interpretation of the law in briefs and at the hearing. The hearing was held on July 21, 1982, and the matter was taken under advisement on July 26, 1982. Due to their agreement on the facts of the case and difference as to the applicable law, we find that the cross motions for summary judgment are an appropriate method of deciding both these proceedings according to Fed.R.Civ.P. 56, which is made applicable to bankruptcy cases by Rules Bankr.Proc.Rule 756, 11 U.S. C.A.

## A. FACTS

The debt in question arises from a state court paternity suit brought by Phyllis Isenhower against Cain in the Johnson Circuit Court, Juvenile Division, Johnson County, Indiana, Cause number 3112. After a jury trial in that cause, Cain was found to be the father of her minor child, Amanda Danielle Isenhower, and to owe

find this to be a true alignment of interests: Cain's debts to the other three parties are the subject matter of both proceedings and motions for summary judgment. For a detailed listing of the debts, see note 3 infra.

the child a duty of support. A judgment entry was made on December 8, 1981, providing that Cain should pay a certain weekly sum to Phyllis Isenhower for support of their child, a fee to her attorney John Philip Wilson, and the costs of the trial.[3]

Cain filed a voluntary chapter 7 petition in bankruptcy on January 22, 1982, listing the above debts.

On March 8, 1982, after both Cain and Phyllis Isenhower had filed in state court motions to reconsider the December 8, 1981, judgment, and Phyllis Isenhower had filed a petition to Show Cause alleging that Cain was in contempt of Court for failure to pay child support, the Johnson Circuit Court issued a Nunc pro Tunc entry for December 8, 1981. As a result of the Nunc pro Tunc entry, all of the above debts owed by Cain were explicitly characterized as child support.

Cain raised no objection to the award of attorney's fees on the basis of Phyllis Isenhower's financial position. Noting the similarity of a paternity suit to a child custody proceeding, in which "a decision to grant attorney's fees is an adjudication of [the mother's] need of such support in order to litigate with her husband on an equal basis," *In re Catlow,* 663 F.2d 960, 963 (9th Cir.1981), we find the entire debt herein to be in the nature of child support, as the state court has designated it. Neither party has disputed this. *Cf. Nichols v. Hensler,* 528 F.2d 304, 308 (7th Cir.1976) (in Indiana, relative income of wife is a basis of award of attorney fees in a divorce proceeding, making such fees equivalent of support) *and Matter of Gilbert,* 10 B.R. 462, 463 (Bkrtcy.N.D.Ind.1981).

### B. APPLICABLE LAW

Plaintiff/defendant Cain's contention as to the law is that the debts in question here are dischargeable under 11 U.S.C. § 727, because § 523(a)(5) of the Code, excepting some debts from discharge under § 727, is worded as follows:

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

.  .  .  .  .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement ...

11 U.S.C.A. § 523(a)(5) (West 1979). Debtor emphasizes the phrase, "in connection with a separation agreement, divorce decree, or property settlement agreement," and points to the undisputed fact that his debts herein arose from a paternity suit rather than from a divorce, separation, or property settlement agreement. He has also filed with his motion an affidavit to the effect that he has never been married to Phyllis Isenhower, or "ordered by any court to tender support payments in connection with a separation agreement, divorce decree, or property settlement agreement." As a paternity suit proceeding is not mentioned in the statute, debtor claims that his debt can be discharged. This interpretation of § 523(a)(5) appears to be a case of first impression.

We find that in raising this semantic barrier to the payment of his child support obligations debtor is attempting to use the letter of the law against its spirit, as that

---

**3.** The exact figures found owing by the state court judgment are:
—$350.00 in expert witness fees
—$345.00 for blood tests
—$696.56 medical expenses
—$3,525.00 attorney fees
—$45.00 court costs
—Medical and hospitalization insurance for the child;
—Dental and optometric insurance if possible through his employer;

—75% of all uninsured medical, dental, hospitalization, or optometric expenses incurred on child's behalf;
—Maintain life insurance on himself of at least $20,000, with the child as the sole beneficiary.
—$715.00 jury costs
—$40.00 a week commencing Nov. 20, 1981, increasing to $50.00 a week commencing May 20, 1982.

spirit is embodied in the law's history, case law, and the Code itself.

While a basic purpose of the bankruptcy law has been to give the debtor a fresh start by releasing him from his outstanding debts by discharge, the legal right not to pay a debt, this purpose has always been counterbalanced by a recognition that the nature of some debts should except them from discharge. The right to a discharge is created by law, a matter of statutory grace, while the obligation of support has deeper roots. Family support obligations have traditionally been considered a duty, not a debt, and as such exempt from a bankruptcy discharge. The Supreme Court early recognized this, and expressed the principle of statutory construction we follow here:

> The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife and children of support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce. Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligations and responsibilities which may have resulted from business misfortunes. Unless *positively required by direct enactment* the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral or legal, devolved upon the husband to support his wife and to maintain and educate his children.

*Wetmore v. Markoe,* 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904) (emphasis added). Many courts have agreed that this principle holds good in the context of modern bankruptcy law. *See, e.g., Matter of Garrison,* 5 B.R. 256, 261 (Bkrtcy.E.D.Mich.1980). Section 523(a)(5) contains no positive require-

ment that there be any change in a policy, the nondischargeability of child support obligations, long fixed in case law and statute. As an Indiana case said of alimony: "Before alimony was made nondischargeable by statute in 1903, bankruptcy case law had already ruled it to be so." *In re Knabe,* 8 B.R. 53, 56 (Bkrtcy.S.D.Ind.1980).[4] Judge Norton summarized bankruptcy treatment of these obligations:

> Throughout the history of the United States bankruptcy law, family support obligations have been excepted from discharge. Prior to statutory enactment, nondischargeability was based on the theory that the obligation to support a spouse or child was not a debt, and that only debts could be discharged. Thus the first statutory exception to discharge for family support obligations was "merely declaratory" of the common law.

Norton Bank.L. & Prac. § 27.56.

In the legislative history of § 523(a)(5), neither the House nor the Senate Report includes the language "in connection with a separation agreement, divorce decree, or property settlement agreement" as a limitation upon the kind of support protected. The intent is expressed, in the Senate Report, that the language of the bill "will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent." S.Rep. 95–989, 95th Cong., 2d Sess. (1978), reprinted in Collier on Bankruptcy, App. 3 (15th ed. 1982), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865. The House Report says, "Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child." H.Rep. 95–595, 95th Cong., 1st Sess. (1977), reprinted in Collier on Bankruptcy, App. 2 (15th ed. 1982), U.S.Code Cong. & Admin.News 1978, p. 6320. We think the substantive concern of the law is evidenced in that language, and that it shows no intention to exclude an obligation of support based upon a paternity suit.

---

**4.** Prior to 1903, debts for child and wife support were "treated as police regulations, and therefore neither provable nor dischargeable."

1A Collier on Bankruptcy ¶ 17.19 (14th ed. 1978).

The Code itself in subsection (B) of § 523(a)(5), also evidences what the essential concern of the law is: the true nature of the debt rather than its form should determine dischargeability. Only if the debt is "actually in the nature of alimony, maintenance or support" is it to be nondischargeable. § 523(a)(5)(B).

Debtor appears to be imposing the maxim of "expressio unius est exclusio alterius" on the statute to reach the result he does. While this is a possible interpretation, we find it far from mandatory. Judge Skelly Wright said of that maxim that it is "increasingly considered unreliable [in statutory interpretation] for it stands on the faulty premise that all possible alternatives were necessarily considered and rejected by the legislative draftsmen." *National Petroleum Refiners Ass'n v. F.T.C.*, 482 F.2d 672, 676 (D.D.C.1973), *cert. denied* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). The legislative history of § 523 contains no reference to the possibility of changing established bankruptcy law by excluding child support that arises from a state court paternity suit. The effect of such a change would be to cause the statute to discriminate against illegitimate children. If support established by a paternity suit is excluded from § 523(a)(5), the statute would protect legitimate children from loss of their support in bankruptcy, but exclude illegitimate children from such protection (except in the somewhat exceptional circumstance of a divorce, separation, or property settlement agreement that provided for an illegitimate child). The Supreme Court in *Trimble v. Gordon,* discussing an Illinois law resulting in a similar effect upon illegitimate children, said: "[W]e conclude that the statutory discrimination against illegitimate children is unconstitutional." *Trimble v. Gordon,* 430 U.S. 762, 766, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31 (1977).[5] Thus the reading we give § 523(a)(5) preserves its constitutionality as well as being in accord with its legal and legislative history.

Judge Norton reads the section as we do: he refers to a paternity suit as a legitimate source for a § 523(a)(5) exception from discharge:

> An obligation is excepted from discharge pursuant to § 523(a)(5) if it is founded on a legal duty of support. That duty, although required by federal law for dischargeability purposes, is imposed by state law. If there is no enforceable support duty, an obligation is dischargeable even if it is in the nature of support.... While the presence or absence of a duty to support may require extensive legal proceedings (such as, for example, a paternity action), it is usually determined quite readily.

Norton, *supra,* § 27.57. A paternity suit was, in this case, the means of establishing the "enforceable support duty." As the necessary legal proceeding to establish support, it shares the characteristics of the proceedings mentioned in the statute, those for separation, divorce, and property settlement. It appears that those legal proceedings are mentioned in order to distinguish legally established family relationships as the bases of a support obligation from mere contractual obligations. See 3 Collier on Bankruptcy ¶ 523.15[2]. Though Collier's uses the word "only" in connection with the separation agreement, divorce decree, or property settlement agreements, the distinction emphasized is between such legally established relationships and "a mere agreement." *Id.* As Judge Norton says of the relationship between spouses,

---

**5.** The Illinois Supreme Court's defense of the statute relying on the state's interest in the promotion of legitimate family relationships was rejected: "[W]e have expressly considered and rejected the argument that a state may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships." 430 U.S. 769. As for the "more substantial justification" of the state's interest in establishing a method of property disposition, that interest is analogous to the bankruptcy goal of protecting debtors' interest in a fresh start, and the conflicting interests involved are discussed above. The fact that we are analyzing a federal, not a state statute, does not alter the impact of the values discussed.

[I]t is difficult to establish the relationship between the duty and the debt, because a debtor-creditor relationship can exist between spouses (or former spouses) for reasons other than support, and it is often uncertain whether the debt has a nondischargeable support base or some other dischargeable base.

Norton, § 27.56. Here, no uncertainty exists as to whether this debt is or is not for support: it has a legal support base.

In a case in which the debtor argued that a support payment could be discharged because it was directed to be paid to the attorney rather than to the child, the court concluded: "The pertinent inquiry in determining whether a debt is dischargeable is whether payment has been ordered in recognition and fulfillment of a duty to provide for the well-being of his or her child." *In re Morris*, 14 B.R. 217, 219 (Bkrtcy.D. Colo.1981). We agree. That court also pointed out that an analysis of § 523(a)(5) "undoubtedly expresses a Congressional judgment that the need for the enforcement of obligations arising out of the family relationship and the stability generated thereby outweighs the general bankruptcy goal of a fresh start." [6] *Id.*, 220. We think there can be no question that the relationship in this case, that of a father and daughter, is a family relationship, despite the lack of marriage ties between the child's father and mother. State law made this relationship legal by means of the Johnson Circuit Court judgment. For the purposes of dischargeability, a bankruptcy court may look behind a state court designation at the actual nature of the obligation, and "if a debt is imposed to discharge the state law duty of support, no matter what the form of the obligation, it is nondischargeable in bankruptcy." *In re Warner*, 5 B.R. 434, 439 (Bkrtcy.D.Utah 1980). As another court said of the 1978 Code's changes in the law: "[W]hen considered in a historical and constitutional light, [they] were not intended to thwart and impede the enforcement of nondischargeable alimo-

ny and child support obligations by the states against those who seek refuge in the bankruptcy courts ... These sections were not intended to make the bankruptcy courts a sanctuary for those who would avoid alimony and child support obligations." *Matter of Garrison, supra*, 5 B.R. at 259.

An Indiana case has made the same analogy we are using. In a case involving a paternity suit, the court said of the expenses awarded a woman in the successful prosecution of a paternity action:

This expense is so closely akin to the judgment for support that to allow its discharge would effectively prohibit an unwed mother from engaging legal counsel to pursue her rightful cause of action. The situation is analogous to divorce actions where it is well settled that attorney fees are nondischargeable.

*In re Porter*, Bankr.L.Rep. (CCH) ¶ 64,575 (S.D.Ind.1971). *Porter* also held that hospital, medical, and blood test expenses should be nondischargeable "because they have the same legal characterizations and qualities as an allowance for support." *Id.* Our analogy between a paternity suit and a divorce decree (for example) is based upon a similar sharing of legal characteristics. A later Indiana case, referring to attorneys' fees in a divorce proceeding, said: "Such fees are a necessity for the indigent spouse in that court-supervised dissolution is the only legally recognized means of ending the marital relationship." *In re Knabe, supra*, 8 B.R. at 57. Here, a paternity suit was the "only legally recognized means" of establishing the relationship between the father and the child, and obtaining support for the child. Its likeness to a separation agreement or divorce decree, for the purposes of dischargeability, cannot be disputed.

■ A bankruptcy court is a court of equity. As such, "[W]e do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exer-

---

**6.** In this context it may be asked whether a reading of § 523(a)(5) that so simply opens the bankruptcy court's door to an unsuccessful state court defendant in a paternity suit is in the best interest of societal stability.

cise of bankruptcy jurisdiction." *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). We must follow "the well established principle of bankruptcy law that dischargeability must be determined by the substance of the liability rather than its form." *In re Spong*, 661 F.2d 6, 9 (2d Cir.1981). As a debt the substance of which is child support, established in a state court paternity suit, we find this debt to be nondischargeable under 11 U.S.C. § 523(a)(5).

Therefore, we DENY debtor's motion for summary judgment herein, and GRANT the motion for summary judgment made by Phyllis Isenhower and John P. Wilson.

SO ORDERED.