**In re Ronald BRUNER, Debtor.**

**Alice PARKER, Plaintiff,**

**v.**

**Ronald BRUNER, Defendant.**

**Bankruptcy No. 83–00233(SE).**
**Adv. No. 83–0161(SE).**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

April 23, 1984.

James Reeves, Caruthersville, Mo., for plaintiff.

Richard Goldstein, Cape Girardeau, Mo., Jimmy D. Collins, Memphis, Tenn., for defendant.

Paul H. Berens, Cape Girardeau, Mo., for Trustee.

William H. Frye, Cape Girardeau, Mo., Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

(1) *Dischargeability of Plaintiff's Seduction Judgment and Underlying Claim*

Plaintiff seeks a determination that her state court judgment for seduction and breach of promise to marry against Defendant is non-dischargeable. The judgment was entered after a jury trial and verdict for plaintiff on March 21, 1983 by the Circuit Court of New Madrid County, Missouri. The amount of the judgment is $75,000, $25,000 for actual damages and $50,000 in punitive damages. Defendant has appealed this judgment but, as of this date, no decision has been handed down by the Southern District of the Missouri Court of Appeals.

██ (a) *Merits of Plaintiff's Claim.* Since Plaintiff's judgment is not final, this Court, upon the filing of Defendant's Chapter 7 petition, acquired the jurisdiction to consider the merits of Plaintiff's claim for seduction and breach of promise. However, the Court concludes that consideration of the merits of Plaintiff's claim and the merits of Defendant's allegations of error in the state court trial of this claim are better left, at least at this time, to the Missouri Appellate Court. If the judgment is reversed by the Missouri Court of Appeals and remanded for a new trial, this Court may then re-assert jurisdiction to consider the validity of Plaintiff's claim as

it would the validity of any other claim filed in Defendant's related Chapter 7 proceeding.

However, the lack of finality of Plaintiff's judgment does not preclude this Court from considering whether the judgment, if final, and Plaintiff's underlying claim, if valid, is dischargeable or non-dischargeable under 11 U.S.C. § 523(a). Solely for the purpose of such determination, the Court will accept the jury's verdict, their underlying findings and the judgment as being final.

(b) *Is Plaintiff's claim for seduction and breach of promise non-dischargeable under 11 U.S.C. § 523(a)(2)(A)?* The verdict-directing instruction given the jury by the state court reads as follows:

Your verdict must be for Plaintiff, Alice J. Parker if you believe:

First, Plaintiff was previously of a chaste character, and

Second, Defendant represented to Plaintiff that he loved Plaintiff; that they would get married and that Defendant did not want sexual relations with any other women intending that Plaintiff rely upon such representations in consenting to sexual intercourse with Defendant, and

Third, the representations were false and Defendant knew they were false and were made with the intent to seduce the Plaintiff, and,

Fourth, the representations were material to Plaintiff's consent to sexual intercourse with the Defendant, and

Fifth, Plaintiff relied upon the said representations in submitting to sexual intercourse with the Defendant and in so relying Plaintiff was using ordinary care, and,

Sixth, as a direct result of such representations the Plaintiff was damaged.

██ Since the jury found in favor of the Plaintiff, Alice Parker, the Court is required to assume that the jury found each of the elements of the verdict-directing instruction to be true, particularly, the second and third propositions of the instruction which state in effect that Defend-

ant knowingly made false representations of love and his intention to marry in order to seduce the Plaintiff. Further, although the doctrine of *res adjudicata* is not applicable to dischargeability proceedings, *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), specific state court findings resolving factual issues are binding upon a bankruptcy court in a subsequent dischargeability proceeding under the doctrine of collateral estoppel, at least where the standards for making the findings of fact are the same in both courts, *In re Davis*, 18 B.R. 301 (Bkrtcy.D.Kan.1982); *In re Hunter*, 17 B.R. 523 (Bkrtcy.W.D.Mo. 1982). Hence, the aforementioned findings of fact by the state court jury are binding on this Court in this proceeding.

Given these findings of fact then, Plaintiff first urges that her claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) since Defendant acted fraudulently in inducing her to have sexual relations with him.

11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining *money, property, services,* or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; (emphasis added)

■ Thus, for a debt fraudulently incurred to be non-dischargeable under this subsection, it must be a debt incurred "for obtaining money, property, or services, or an extension, renewal or refinance of credit ....", see *Collier on Bankruptcy*, Vol III, Section 523.08(1) (15th Ed.).

Applying this condition to the case at bar, the Court concludes that Defendant obtained neither money, property, services, nor any form of extension, renewal, or refinance of credit from Plaintiff and, thus, subsection (a)(2)(A) of section 523 of the Code is inapplicable.

■ True, Defendant induced Plaintiff to have sexual relations with him under knowingly false pretenses but Plaintiff's sexual favors do not come within the categories of "property" or "services" under the foregoing subsection.

■ As the United States Supreme Court has stated in this context:

At most it (property) denotes something subject to ownership, transfer or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business and the same significance attaches to it in many carefully prepared writings. (Parenthetical material added), *Gleason v. Thaw*, 236 U.S. 558, 561, 35 S.Ct. 287, 288, 59 L.Ed. 717 (1914).

Clearly, sexual relations do not fit the definition of "property".

■ Similarly, sexual relations do not come within the category of "services". The term "services" means work or labor that is compensable, see *Collier on Bankruptcy*, Vol. III, section 523.08[3] (15th Ed.).

(c) *Is Plaintiff's claim for seduction and breach of promise non-dischargeable under 11 U.S.C. § 523(a)(6)?* Plaintiff makes the more serious contention that her claim for seduction and breach of promise is a debt arising from a willful and malicious injury to her person by Defendant within the meaning of 11 U.S.C. § 523(a)(6).

That subsection provides that:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

Prior to 1903, some courts had indeed held a claim for seduction that had been reduced to judgment was a willful and malicious injury under section 17(a)(2) of the

Bankruptcy Act of 1898, and, therefore, non-dischargeable, *In re Maples,* 105 Fed. 919 (D.Mont.1901); *In re Freche,* 109 Fed. 620 (D.N.J.1901). In 1903, Congress amended section 17(a)(2) of the Act to include "liabilities ... for seduction of an unmarried female" as non-dischargeable debts.

In 1917, Congress again amended section 17(a)(2) to further include "liabilities ... for breach of promise of marriage accompanied by seduction", see *Collier on Bankruptcy,* Vol. 1A, sections 17.01[2.1] and [2.2], (14th Ed.).

These specific exceptions to discharge remained while the Bankruptcy Act of 1898 was in effect but were not continued in section 523 of the present Bankruptcy Code. Congress' intention in this regard, the Court concludes, controls the question of whether Plaintiff's claim for seduction and breach of promise is dischargeable under present bankruptcy law.

Neither the transcripts of the Congressional debates nor the Congressional committee reports on the present Bankruptcy Code contain any indication why Congress deleted seduction and breach of promise as specific categories of non-dischargeable debts.

The only discussion that the Court can find on this matter in *any* of the legislative history of the current Bankruptcy Code is contained in the following comments to section 4–506(a)(6) of the model Bankruptcy Act proposed by the Commission on Bankruptcy Laws of the United States, a commission appointed by Congress in 1970 to recommend changes in bankruptcy law:

> 12. *Clause (6) of subdivision (a)* overhauls § 17a(7) of the present Act. Under the proposed Act debts denied dischargeability under the clause are limited to family support obligations; debts "for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation" are eliminated as no longer responsive to prevailing social policy. *See Collier on Bankruptcy,* Vol. II, Appendix, p. 139 (15th Ed.).

■ Although there is nothing else in the legislative history of the Code that indicates whether Congress attached the same significance as did the Commission to their deletion of specific exceptions for seduction and breach of promise, the Court concludes that Congress did intend, in light of changing policy, to make liabilities for seduction and breach of promise dischargeable under the present Bankruptcy Code. It is unreasonable to conclude, as apparently the court did in *In re Aguilar,* 33 B.R. 535 (Bkrtcy.N.D.Ohio 1983), that Congress only intended to resurrect the case law pre-existing the 1903 and 1917 amendments to the Bankruptcy Act that had held that liabilities for seduction and criminal conversation were liabilities for "willful and malicious" injuries. Given the confusion the courts must have then experienced in deciding whether the damages in a seduction and breach of promise judgment were awarded for the seduction (coitus and, therefore non-dischargeable) or for the breach of promise to marry (contractual and, therefore, dischargeable), *see Collier on Bankruptcy,* Vol. 1A, sections 17.20– and 17.21 (14th Ed.), it is unlikely that Congress intended to reintroduce such confusion in the present Bankruptcy Code. Further, it is unlikely that Congress merely intended, by its action, to shift such liabilities from a specific category of non-dischargeable debts to the more general category of "willful and malicious" injuries.

Accordingly, the Court concludes that Plaintiff's claim and judgment against Defendant for seduction and breach of promise is dischargeable.

(d) *Dischargeability of Plaintiff's claims for child support and related expenses.* Plaintiff also seeks a determination of the dischargeability status of Defendant's obligations to her for support for the minor child born as a result of their relationship and for related expenses such as her attorney's fees incurred in bringing an action for child support now pending in state court and her medical expenses involved in the birth of the parties' minor child. The Court has already granted

Plaintiff relief from the automatic stays to proceed with her state court action to determine Defendant's liability to her for support and the amount thereof but has restrained her from attempting to collect any awards or judgments for such obligations pending this Court's determination of the dischargeability of Defendant's support obligations.

Section 523(a)(5) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, *in connection with a separation agreement, divorce decree, or property settlement agreement,* but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; (emphasis added).

Thus, to be non-dischargeable, any debt for child support owed by the debtor must be incurred or arise from a separation agreement, divorce decree, or property agreement. Where the debt for child support does not arise from such a context, the courts have almost uniformly held that any such arrearage *is* dischargeable, *In re Marino,* 29 B.R. 797 (N.D.Ind.1983); *In re Fenstermacher,* 31 B.R. 77 (Bkrtcy.D.Neb. 1983); *In re Leach,* 15 B.R. 1005 (Bkrtcy.D. Conn.1981) *Contra: In re Cain,* 29 B.R. 591 (Bkrtcy.N.D.Ind.1983).

The holding in the *Cain* case was effectively reversed by the holding of the U.S. District Court for the same district in the *Marino* case and, to the extent that the court in the *Cain* case concluded that Congress did not intend to render as dischargeable debts for support not arising from separation agreements, divorce decrees, or

property settlements, this court also disagrees with this conclusion.

House Bill H.R. 8200, the version of the present Bankruptcy Code initially passed by the House on February 8, 1978, contained the following provision regarding the dischargeability of debts for support:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child; H.R. 8200, 95th Cong. 1st Sess.

Obviously, the broad language of this provision would include debts for support obligations not arising in connection with "separation agreements, divorce decrees, or property settlements".

However, after the initial passage of H.R. 8200, Senate Bill S.2266 was introduced in the Senate. It contained the following provision on the dischargeability of debts arising from support obligations:

523. **Exceptions to discharge**

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) any liability to a spouse or child for maintenance or support, or for alimony due or to become due in connection with a separation agreement or divorce decree. A debt shall not be excepted from discharge, however, solely because the spouse is obligated in any manner to pay the debt, and except that if such maintenance, support or alimony award includes liability debts accrued prior to the separation agreement or divorce decree, then the court may determine that such debts may be discharged; S.2266, 95th Cong., 2d Sess.

Rather than enacting S.2266, the Senate amended H.R. 8200 by striking all of its provisions after the enacting clause and then substituting the provisions of S.2266,

*Collier on Bankruptcy,* Vol. Appendix 3, p. VII–1 (15th Ed.).

Representatives from the House and the Senate then compromised their differences and inserted these compromises as amendments in the nature of a substitute to the Senate amendment to H.R. 8200, *Collier on Bankruptcy, supra* at p. IX–1 (15th Ed.), H.R. 8200 as so amended, and with some additional amendments, was then passed by both houses of Congress, *Collier on Bankruptcy, supra* at p. x–1 (15th Ed.).

As can be seen, the language in the current section 523(a)(5) of the Code which appears to limit non-dischargeability status to those debts for support obligations arising "in connection with separation agreements, divorce decrees, and property settlements" first appeared in substantially similar form, in S.2266. After the compromise between the House and the Senate, this restrictive language was retained along with the inclusion of support obligations arising in connection with a "property settlement". Thus, the Court cannot escape the conclusion that the Congress *did* intend to restrict non-dischargeability status only to those support obligations arising from separation agreements, divorce decrees, and property settlements. If Congress had intended to include all support obligations, it would never have changed the afore-quoted language in H.R. 8200 as initially passed by the House.

■ Turning then to the case at hand, any pre-petition indebtedness owed the Plaintiff by Defendant for the support of their minor child is therefore dischargeable. The parties were never married and there is no evidence that the parties ever entered into any form of a property settlement. Plaintiff, besides an award of future child support, is also seeking in state court reimbursement for the medical expenses incurred by her in the birth of the parties' minor child. Since Defendant's liability for such medical expenses, if any, would be fixed at the time they were incurred, such liability would be dischargeable.

A similar analysis would apply to any attorney's fees incurred by plaintiff.

■ Plaintiff has challenged the constitutionality of section 523(a)(5) in light of such U.S. Supreme Court cases as *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973); and *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). Since this section does have a clear discriminatory effect on the support rights of illegitimate children, the holdings of these cases do raise a serious question as to this section's constitutionality under the Fifth Amendment to the U.S. Constitution. However, the Court declines to hold this section unconstitutional for the following reasons:

(a) This section would also render as dischargeable arrearages for the support of legitimate children under certain circumstances. For example, if one parent of a legitimate child should die, any support arrearage owed by the surviving parent for the child would be dischargeable since the arrearage could not arise in connection with a separation agreement, divorce decree, or property settlement. Hence, the unconstitutionality of this section is not obvious.

■ (b) It is not appropriate for a trial court, particularly one of limited jurisdiction, to hold acts of Congress unconstitutional unless such statutes are obviously and clearly unconstitutional, *Matter of Caro Products, Inc.,* 23 B.R. 245 (Bkrtcy. E.D.Mich.1982).

However, with respect to support obligations accruing after the date of the filing of Defendant's Chapter 7 petition, the Court reaches the opposite conclusion.

Section 727(b) of the Code provides:

(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from *all debts that arose before the date of the order for relief under this chapter,* and any liability on a claim that is determined under section 502 of this title

as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title. (Emphasis added).

Although sections 101(11) and 101(4) of the Code give a very broad definition of the term "debt", the court concludes that Congress did not intend to include future obligations for the support of the debtor's child within that definition.

Even before the Bankruptcy Act of 1898 contained a specific exception to discharge for support obligations, the United States Supreme Court had held that obligations for alimony and for child support were not "debts" within the meaning of the then Bankruptcy Act of 1898, *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904); *Dunbar v. Dunbar*, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1903), and, therefore, were not discharged.

Although Congress by its enactment of section 523(a)(5) of the Code has modified these holdings to the extent of pre-petition support arrearages, there is no indication in the current Bankruptcy Code or its legislative history that Congress also intended that a debtor could discharge his or her entire obligation to support his or her minor child.

■■■■ As the United States Supreme Court stated in *Wetmore v. Markoe, supra*, at page 77, 25 S.Ct. at page 175:

The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce. Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive and to permit him to have a fresh start in business or commercial life, freed from the obligation and responsibilities which may have resulted from business misfortunes. *Unless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children.* While it is true in this case the obligation has become fixed by an unalterable decree, so far as the amount to be contributed by the husband for the support is concerned, looking beneath the judgment for the foundation upon which it rests we find it was not decreed for any debt of the bankrupt, but was only a means designed by the law for carrying into effect and making available to the wife and children the right which the law gives them as against the husband and father. (Emphasis added).

■■■■ Accordingly, Defendant's obligations for the support of his and the Plaintiff's minor child that have accured or matured since the filing of his petition under Chapter 7 of the Code, July 20, 1983, are non-dischargeable.

The Court will enter a separate order consistent with this opinion.