**Michael J. MULLALLY, Plaintiff,**

v.

**Linda CARTER, Defendant.**

**No. 85 C 8573.**

United States District Court, N.D. Illinois, E.D.

Sept. 22, 1986.

W. Elliott Dunn, Waukegan, Ill., Thomas Cannon, Cooper & Cooper, Chicago, Ill., for plaintiff.

Michael S. Grant, Fox Lake, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case is an appeal from the Bankruptcy Court's grant of appellee's motion for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

Appellant/Debtor Michael J. Mullally ("Mullally") entered into a child support agreement ("Agreement") with Appellee Linda Carter ("Carter") on March 14, 1978. In the Agreement, Mullally admitted paternity of Carter's daughter Jaime Michelle Carter ("Jaime") and agreed to pay Carter thirty dollars per week for the support of Jaime. Under the Agreement, the payments were to continue until Jaime's death or majority, whichever occurred first. In consideration for this admission of paternity and promise to make child support payments, Carter waived her right to prosecute a paternity suit against Mullally as a result of Jaime's birth.

Mullally never fulfilled his support obligations under the Agreement. In 1981, Carter therefore sued Mullally to enforce the Agreement. The case was set for trial on August 18, 1983. On August 17, 1983, one day prior to trial, Mullally commenced this bankruptcy proceeding, listing Carter as an unsecured creditor. Carter filed a complaint objecting to the discharge of Mullally's obligations to Jaime under the Agreement.

Carter and Mullally filed cross-motions for summary judgment on the issue of the

non-dischargeability of Mullally's obligation under the Agreement. The bankruptcy judge entered summary judgment in favor of Carter and against Mullally, holding that because the obligation was in the nature of child support, the debt was non-dischargeable under 11 U.S.C. § 523(a)(5) (1983), *amended by* 11 U.S.C. § 532(a)(5) (Supp. II 1984).

Mullally now appeals the bankruptcy judge's decision on the basis that 11 U.S.C. § 523(a)(5) (1983), *amended by* 11 U.S.C. § 523(a)(5) (Supp. II 1984) (hereinafter "§ 523(a)(5) (1983)") did not except his obligation under the Agreement from discharge. For the reasons stated below, we affirm the bankruptcy judge's entry of summary judgment in favor of Carter.

## THE APPLICABLE LAW

This case is governed by Bankruptcy Code § 523(a)(5) as it read when this suit was commenced on August 17, 1983. Bankruptcy Amendments and Federal Judgeship Act, Pub.L. No. 98–353, § 553(a), 98 Stat. 333, 392 (1984). At that time, the relevant portion of 523 read as follows:

(a) A discharge under section 727, 1241 or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouse of child, in connection with a separation agreement, divorce decree, or property settlement agreement....[1]

The issue in this case is whether a non-assigned obligation that arises out of a voluntary agreement, made in settlement of a paternity suit, in which the debtor admits paternity and agrees to make child support

payments, is excepted from discharge in bankruptcy under 11 U.S.C. § 523(a)(5) (1983) of the Bankruptcy Code. Mullally argues that his obligation to Jaime under the Agreement should not be excepted from discharge because the debt is not "in connection with a separation agreement, divorce decree or property settlement agreement," as required by the statute. He believes that a plain reading of the statute leads to the conclusion that it does not make his obligation under a child support agreement non-dischargeable because the Agreement was not made in connection with a separation agreement, divorce decree or property settlement agreement. As Jaime's parents were never married it is clear that this Agreement could not have been made in connection with a divorce decree, separation agreement or property settlement. *DuPhily v. DuPhily,* 52 B.R. 971, 975 (D.Del.1985).

There is one rule of statutory construction that exceptions to discharge under the bankruptcy laws must be plainly expressed and strictly construed in favor of the debtor. *See, e.g., In Re Cross,* 666 F.2d 873, 879–80 (5th Cir.1982). Mullally urges this Court to strictly construe § 523(a)(5) (1983), relying on cases where courts held that court ordered obligations which do not arise "in connection with" a separation agreement, divorce decree or property settlement agreement are not excepted from discharge under § 523(a)(5) (1983). *See, e.g., In Re Marino,* 29 B.R. 797 (N.D.Ind. 1983); *In Re Richards,* 33 B.R. 56 (Bankr. D.Ore.1983), *rev'd Oregon v. Richards,* 45 B.R. 811 (D.Ore.1984); *In Re Leach,* 15 B.R. 1005 (Bankr.D.Conn.1981). For the most part, these cases concern obligations in the nature of child support owed to third parties by way of assignment.[2] This, of course, is not present in this situation.

---

1. This section of the Bankruptcy Code was amended on July 10, 1984, as Pub.L. No. 98–353, 454(b), 98 Stat. 333, 376 (1984) to clarify the provisions regarding the discharge of child support obligations. Cong.Rec. S6094 (daily ed. May 21, 1984). The new amendment prevents discharge of a non-assigned obligation in connection with a court order or one that has been assigned to the federal government, a state or

municipality. *See* 11 U.S.C. § 523(a)(5) (Supp. II 1984).

2. Of the two cases defendant cites for this proposition which do not concern assignments to third parties, *In Re Shine* and *In Re Bruner,* one has been subsequently reversed and in the other there had been no establishment or admission of paternity as in the present case. *In Re Shine,*

More appropriate to the instant case are cases that have held that support obligations arising out of court orders of paternity are *not* dischargeable in bankruptcy. *Matter of Pierson*, 47 B.R. 258 (Bankr.D. Neb.1985); *In Re Balthazor*, 36 B.R. 656 (Bankr.E.D.Wis.1984); *In Re Cain*, 29 B.R. 591 (Bankr.N.D.Ind.1983); *see also In Re Mojica*, 30 B.R. 925 (Bankr.E.D.N.Y.1983). These courts have declined a more restrictive reading of § 523(a)(5) (1983) for several reasons. First, that the specific enumerations of the "in connection" clause simply reflect Congressional commitment to except from discharge only those debts that are truly in the nature of alimony or support to a wife or child of the debtor. *In Re Mojica*, 30 B.R. 925, 928, 930–31. Second, they have read § 523(a)(5) (1983) to include support obligations arising out of a paternity order because of concern that a more restrictive reading of the statute could result in an unconstitutional discrimination against illegitimate children. *Matter of Pierson*, 47 B.R. 258, 260; *In Re Balthazor*, 36 B.R. 656; *In Re Cain*, 29 B.R. 591, 595. In fact, one court recently held that § 523(a)(5) (1983), as it read prior to its amendment in July of 1984, was unconstitutional because it created an impermissible distinction between the rights of legitimate and illegitimate children as creditors, in violation of the equal protection clause of the Fifth Amendment. *DuPhily v. DuPhily*, 52 B.R. 971, 975–78 (D.Del.1985).

Mullally nonetheless argues that because his obligation to pay child support arises out of a *voluntary agreement* and not a court order of paternity, the holdings in *Pierson, Balthazor, Cain* and *Mojica* are inapplicable here. This is a very peculiar argument for Mullally to make in light of the nature of the Agreement. Under the Agreement, Linda Carter waived her right to sue or prosecute a claim for support and paternity in exchange for Mullally's admission of paternity and agreement to support Jaime.[3] Thus, by his own admission, Mullally made a paternity suit moot.

We need not decide whether or not Congress specifically intended to exclude voluntary support agreements from the exceptions to discharge under § 523(a)(5) (1983) because in this case the Agreement fulfills the purposes of a court order requirement. Whatever policies or concerns might underly a strict requirement that child support obligations to illegitimate children be nondischargeable unless evidenced by a court order of paternity, those concerns are certainly not present under these circumstances.

Clearly, one major governmental interest in requiring a court order of paternity would be to insure against spurious and fraudulent claims. *See, e.g., DuPhily v. DuPhily*, 52 B.R. 971, 977. That concern simply does not apply in this case because Mullally admits entering into the Agreement in which he admits to paternity of Jaime, and he does not now deny that he is her father. We are therefore not concerned here with the possibility that Jaime's claim is either fraudulent or spurious.

Furthermore, it is important to note precisely *why* there is no court order of paternity or of any other kind in this case. First, by the terms of the Agreement, Carter has waived any right to bring an action in paternity as a result of Jaime's birth. Second, when she did file suit in state court to enforce the Agreement, Mullally filed this suit in bankruptcy, one day prior to trial in that case, in an obvious attempt to avoid his support obligations. Mullally now claims that as a result of this skillful maneuvering on his part, his support obligation to Jaime should be forever discharged, because it does not arise in connection with a divorce decree, separation agreement, property settlement, paternity order or any other order of court.

49 B.R. 978 (Bankr.D.N.H.1985), *rev'd* 57 B.R. 386 (D.N.H.1986); *In Re Bruner*, 43 B.R. 143 (Bankr.E.D.Mo.1984).

**3.** In fact, Carter was advised by the Illinois Department of Public Aid that the Agreement pre-empted a paternity action by the State.

We believe that by invoking this semantic distinction, Mullally is attempting to use the letter of the bankruptcy law against its spirit. *In Re Cain,* 29 B.R. 591, 593. Although the basic purpose of the bankruptcy law has been to give the debtor a fresh start by discharging his outstanding debts, "family support obligations have traditionally been considered a duty, not a debt, and as such exempt from discharge." *Id.* at 594. Long ago, the Supreme Court cautioned against sanctioning the type of conduct Mullally now engages in, stating:

> The bankruptcy law should receive such an interpretation as will effectuate its beneficient purposes, and not make it an instrument to deprive dependent wife and child of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce..... *Unless positively required by direct enactment* the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, oral or legal, delayed upon the husband to support his wife and to maintain and educate his children.

*Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 175–76, 49 L.Ed. 390 (1904).

This policy against allowing debtors to manipulate the bankruptcy laws in order to escape their moral and legal obligations to support their children was recently underscored when, in his introductory remarks to the 1984 amendment to Bankruptcy Code 523(a)(5), Senator Exon stated,

> Sadly, due to the high rate of divorce and the increasing number of children born out of wedlock, more and more children are living with only one of their natural parents.
>
> Many of these children are being deprived of the support owed to them by their noncustodial parent. *The number of parents who ignore their child support obligations is a national disgrace.*

130 Cong.Rec. S6094 (daily ed. May 21, 1984).

We therefore reject Mullally's argument that his obligation to support Jaime should not be excepted from discharge because it does not take the form of an order of court. Because the Agreement is evidence of a legitimate obligation to support a child of the debtor, we see no reason for excepting it from discharge simply because it did not arise in a manner expressly enumerated in the statute. In bankruptcy proceedings, equity requires that the substance of the debt should prevail over form where appropriate. *In Re Mojica,* 30 B.R. 925, 928–29; *In Re Cain,* 29 B.R. 591, 597.

Here, the Agreement is, on its face, unequivocally in the nature of one for support of a child of the debtor. In it, Mullally admitted paternity of Jaime and agreed to pay thirty dollars per week "as and for child support of JAIME MICHELLE CARTER, until said minor's death or majority, whichever occurs first." We therefore agree with the bankruptcy judge that the debt is nondischargeable under § 523(a)(5) (1983) of the Bankruptcy Code and affirm the grant of summary judgent in favor of Carter.[4] It is so ordered.

---

4. Mullally, in his brief, takes exception to the bankruptcy judge's statement that "in no event would the debtor's future support obligation be dischargeable." *In Re Mullally,* 56 B.R. 271, 275 (Bankr.N.D.Ill.1985). Because we have decided that the debt is nondischargeable, we need not address this issue.