**In re Edward Lewis BUDKA, Debtor.**

**PEKIN INSURANCE, Rodney Thompson, Robert Cunningham and Cynthia Hagen, Plaintiffs,**

v.

**Edward Lewis BUDKA, Defendant.**

**Bankruptcy No. 90–30929–RKR. Adv. No. 90–3092.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Jan. 3, 1992.

Lizbeth W. Pease, and Steven A. Dodge, Knox, Ind., for plaintiffs.

Peter Rockaway, Plymouth, Ind., for defendant.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

This matter is before the court on a COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT, filed August 13, 1990, by Pekin Insurance, Rodney Thompson, Robert Cunningham, and Cynthia Hagen. A hearing on the complaint was held June 17, 1991. The matter was taken under advisement on October 21, 1991, the time for filing briefs having passed.

### Background

Edward Budka ("Budka") filed his petition for relief under Chapter 7 of the Bankruptcy Code on May 7, 1990. Plaintiffs filed their complaint pursuant to 11 U.S.C. § 523(a)(5), alleging that liability on a civil tort judgment against Hagen and in favor of Thompson and Cunningham should be excepted from Budka's discharge since it represented a claim in the nature of child support.

According to Cynthia Hagen's ("Hagen") testimony at the hearing, Hagen and Bud-

ka were divorced in 1982 or 1983. At that time they had one child. For some time after the divorce Hagen and Budka continued their relationship, and two additional children were born. A voluntary paternity Judgment was entered on September 21, 1987, in the Starke Circuit Court, Cause No. 75C01–8707–JP–017, determining Budka to be the father of the two children born after the divorce. The parties had previously executed an Agreement of the Parties ("Agreement"), which they filed with the state court on July 23, 1987. The state court accepted and approved the Agreement, and it was incorporated into the Judgment.

The Judgment provided that all three children would remain in the custody of Hagen, and Budka would have visitation rights. Budka was to pay $100 per week as support for the three children. (Plaintiffs' Exhibit A–2, filed October 10, 1990.) Paragraph 2 of the Agreement sets forth a "settlement of all property rights" which includes an award to Hagen of a 1982 Skylark automobile. (Plaintiffs' Exhibit A–1, filed October 10, 1990.) Paragraph 10 provides that Budka shall be responsible for all debts of the parties incurred before May 29, 1987, which amount to approximately $19,000. It further states that "(Budka) shall maintain and continue to carry the insurance on the 1982 Skylark, and shall be responsible and pay for the payments thereon to the First National Bank." (*Plaintiffs' Exhibit A–2.*) Paragraph 11 states:

> The parties agree that in undertaking to pay certain debts and obligations specified herein, each party shall hold the other free and harmless for principal, interest, court costs, and attorney fees, including any judgment rendered against the innocent party by virtue of the other party failing to fulfill any debt or obligation.

(*Id.*)

On November 7, 1987, Hagen was involved in an automobile accident, causing injury to Rodney Thompson ("Thompson") and Robert Cunningham ("Cunningham"). However, Budka, without Hagen's knowledge, had failed to pay the insurance premiums required under the paternity judgment, and Hagen was uninsured at the time of the accident. A default judgment in the amount of $24,444.98 against Hagen was obtained in the Starke Circuit Court, Cause No. 75C01–8909–CT–050. Pekin Insurance Company ("Pekin"), Cunningham's insurer, paid the judgment in full.[1] A second judgment relating to the same accident was apparently obtained against Hagen in the Lake County Circuit Court.[2] Hagen has made no payments to any party on either judgment.

On Schedule A–3 of his petition Budka listed indebtedness to both Thompson and Cunningham in the amount of $24,445. None of the plaintiffs herein filed a proof of claim.

On August 13, 1990, Plaintiffs filed this adversary proceeding, claiming that the insurance premiums to be paid by Budka were in the nature of child support. Therefore, they argue, the judgment debt owed to Pekin Insurance Company as subrogee of Thompson and Cunningham is also child support and nondischargeable pursuant to 11 U.S.C. § 523(a)(5). Plaintiffs also ask that the court lift the automatic stay and allow for execution of the judgment.

Budka claims that the judgment debt should not be excepted from his discharge pursuant to § 523(a)(5). Budka first claims that even if payment of insurance premiums constitutes child support, third parties may not enforce a judgment against a debtor when the debtor's former spouse has not suffered monetary damage. Secondly, he denies that the payments are child support, arguing that they are part of the property settlement and are intended to protect the automobile from seizure by the lienholder. Finally, he argues that the Agreement only

---

1. It is unclear whether Thompson and/or Cunningham, or an insurer as subrogee was the plaintiff in the state court case. A copy of the state court judgment was not submitted to this court.

2. The identity of the plaintiff in this action is also unclear. A copy of the state court judgment was not submitted to this court.

calls for Budka to maintain insurance against property damage.

*Discussion and Decision*

This order shall represent findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable in this proceeding by Bankruptcy Rule 7052. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I), over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1). The first issue presented is whether maintaining automobile insurance pursuant to a voluntary paternity judgment is child support within the meaning of 11 U.S.C. § 523(a)(5). If so, the second issue is whether Hagen's liability which resulted from Budka's failure to maintain automobile insurance also constitutes child support within the meaning of 11 U.S.C. § 523(a)(5).

■ Although no motion to dismiss Pekin, Thompson or Cunningham has been filed, the court finds that, under the circumstances presented, only Hagen is a proper plaintiff in this proceeding. Therefore, the court will first address the issue of standing.

There is conflicting evidence as to whether Budka was a named defendant in the Starke Circuit Court action. A copy of the state court judgment was not submitted to this court. Plaintiffs' complaint states that the Starke Circuit Court action resulted in a judgment against both Hagen and Budka. (Plaintiffs' complaint at 4.) However, Hagen testified at the hearing that no judgments had been obtained against Budka. The remaining plaintiffs offered no evidence to rebut Hagen's testimony. Moreover, in Indiana, when a judgment resulting from an automobile accident remains unsatisfied for 90 days, the driver's license of the judgment debtor is suspended pursuant to Ind.Code Ann. § 9-2-1-6 (Burns 1987).[3] According to Hagen's testimony, she has lost her license to drive. There is no claim, or evidence, that Budka has lost his driver's license. This fact, in conjunction with Hagen's undisputed testimony,

warrants a conclusion that none of the other plaintiffs have obtained a judgment against Budka. Therefore, these three plaintiffs are not creditors of Budka, have no claim against him and have no standing as plaintiffs in this adversary proceeding.

Assuming that Hagen's claim as to the obligation in dispute is child support, and assuming she has assigned her rights in that claim to Pekin, Cunningham or Thompson, § 523(a)(5)(A) would be applicable. This section provides that a debt for maintenance or support is not excepted from discharge to the extent that "such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State)." 11 U.S.C. § 523(a)(5)(A) (Callaghan 1991–92). Therefore, the substantive issues presented will be addressed only as they relate to Hagen.

One of the primary purposes of the bankruptcy code is to give the debtor a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971). Consequently, if a debtor is granted a discharge under 11 U.S.C. § 727, a debt is dischargeable unless it is specifically excepted from discharge by § 523, and those exceptions are to be strictly construed. *Lake County Department of Public Welfare v. Marino (In re Marino)*, 29 B.R. 797, 799 (N.D.Ind. 1983). The burden of proof is on the party objecting to the discharge of a debt. The objecting party must establish by a preponderance of the evidence that the debt is squarely within the statutory exception. *Id.*

■ The resolution of this proceeding is governed by § 523(a)(5) of the Bankruptcy Code, which provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

**3.** § 9-2-1-6 was in effect at the time of Hagen's accident. It has since been repealed and re-placed with an identical provision found at Ind. Code § 9-25-6-4 (West Supp.1991).

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement [4] . . . .

11 U.S.C. § 523(a)(5) (Callaghan 1991–92). In order to fall within the scope of this provision, the debt in dispute must actually be for support of the former spouse or the debtor's children, and not a resolution of property rights. When distinguishing support payments from property settlements for the purpose of dischargeability, the court must determine whether the parties and the awarding court intended the payments as support. However, what constitutes support is a federal question, irrespective of the form or label of a state court decree. *In re Woods*, 561 F.2d 27, 29 (7th Cir.1977); *Britton v. Britton (In re Britton)*, 51 B.R. 323 (Bankr.N.D.Ind. 1985). The fact that payment is being made to a third party does not preclude a finding that the payment is in the nature of support. Such a payment will be considered a support obligation if it was intended to serve as such. *Kagan v. Kagan*, 42 B.R. 563 (Bankr.N.D.Ill.1984).

■ Addressing the first issue, the court concludes that Budka's payment of automobile insurance was intended by the parties to be in the nature of support. In reaching this conclusion, the court considered it significant that Hagen and Budka were not married at the time they entered into the Agreement, and, therefore, there was no marital property to divide. Hagen testified that prior to the Agree-

ment, she had no property interest in the automobile. Thus, any provision Budka agreed to concerning the automobile did not result from a legal obligation to divide joint property, but rather from a legal obligation to support his children.

Additionally, "an obligation that serves to maintain daily necessities such as food, housing and *transportation* is indicative of a debt intended to be in the nature of support." *In re Yeates*, 807 F.2d 874, 878 (10th Cir.1986) (emphasis added). *See also Swiczkowski v. Neagley (In re Swiczkowski)*, 84 B.R. 487 (Bankr.N.D.Ohio 1988) (automobile would provide support to debtor's children and former wife; debt owed on automobile awarded to debtor's ex-wife nondischargeable); *Quinn v. Quinn (In re Quinn)*, 44 B.R. 622 (Bankr.W.D.Mo.1984) (payments on automobile awarded to ex-wife contributed to the support of the children); *Harrod v. Harrod (In re Harrod)*, 16 B.R. 711 (Bankr.W.D.Ky.1982). Hagen testified it was necessary for her to have an automobile in order to get to work, do the grocery shopping, and transport the children to school and recreational functions as well as medical appointments. She further testified that Budka agreed to give her the automobile for the above purposes so she "could get back on her feet." Under Indiana law a person must present proof of financial responsibility before registering an automobile, and continue to maintain such financial responsibility as long as the vehicle is operated in Indiana.[5] Without liability insurance, the automobile could not have served its intended purpose of enhancing Hagen's ability to provide for the children.

Finally, the court considered the financial circumstances of the individual parties at

---

**4.** Although paternity suits are not mentioned in the provision, courts have interpreted § 523(a)(5) as including judgments resulting from paternity suits, *Cain v. Isenhower (In re Cain)*, 29 B.R. 591 (Bankr.N.D.Ind.1983), as well as voluntary agreements to support an illegitimate child, *Mullally v. Carter*, 67 B.R. 535 (N.D.Ill.1986).

**5.** Under Indiana law a motor vehicle may be registered in Indiana only if proof of financial responsibility is produced at the time applica-

tion for registration is made. Moreover, financial responsibility must be maintained continuously as long as the vehicle is operated on roads, streets, or highways in Indiana. Violation of this provision is a class C misdemeanor. Ind.Code Ann. § 9–1–4–3.5 (Burns 1987) (in effect at time of the parties agreement; repealed and replaced with identical provisions at Ind. Code §§ 9–25–4–1; 9–25–4–3, 9–25–4–12 (West Supp.1991).

the time Budka agreed to maintain the automobile insurance. Budka was fully employed and his annual salary was approximately $30,000. Hagen was also employed, but her salary was approximately $200 a week, or $10,400 per year. Taking into account the $5,200 per year that Budka was to pay Hagen directly for child support, there was still a wide disparity in their respective incomes. Clearly, it was necessary that Hagen work outside the home, since she could not maintain three children solely on the awarded child support. When Budka agreed to assume the responsibility of maintaining automobile insurance, he was furnishing indirect support to his children by providing Hagen with the ability to work outside the home, as well as relieving her of a financial burden. Thus, the court concludes that the parties considered Budka's provision of automobile liability insurance to be a support obligation.

■ Having reached this conclusion, the court must next consider whether payment of Hagen's liability on the civil tort judgment is also in the nature of support. The plaintiffs in this case state conclusively, "(t)hat the insurance premium, which was to be paid by (Budka), was in the nature of child support and therefore, the judgment and debt owed to plaintiffs from Cause No. 75C01–8909–Ct–050 is non-dischargeable." (Plaintiffs' Complaint, no. 6). This court, however, does not agree that such a conclusion naturally follows the initial determination.

Paragraph 10 of the Agreement as incorporated in the Judgment imposed on Budka, first, a legal duty to pay joint or individual debts incurred before May 29, 1987, and, secondly, a duty to maintain insurance on the automobile. Since the accident giving rise to the tort judgment occurred after May 29, 1987, this is not a debt falling within Budka's first noted duty.

Outside the bankruptcy context, Hagen had the right to enforce the duty to maintain automobile insurance specifically, or to be reimbursed if she was forced to assume that obligation. In the bankruptcy proceeding, Budka's liability for the cost of insurance could be excepted under § 523 as being in the nature of child support.

■ However, Budka's obligation to indemnify Hagen against costs and judgment liabilities which might result from his breach of duty arose under the hold harmless terms of paragraph 11 of the Agreement, which provides:

> The parties agree that in undertaking to pay certain debts and obligations specified herein, each party shall hold the other free and harmless for principal, interest, court costs, and attorney fees, including any judgment rendered against the innocent party by virtue of the other party failing to fulfill any debt or obligation.

Pursuant to this hold harmless clause, Hagen could have joined Budka as a third party defendant in both of the state court actions. Although a consent judgment enjoys all of the force and effect of a judgment of the court, it is characterized in the Indiana courts as a contract to which the rules of contract construction apply. *Gary Municipal Airport Auth. Dist. v. Peters*, 550 N.E.2d 828 (Ind.Ct.App.1990); *Ingoglia v. Fogelson Companies, Inc.*, 530 N.E.2d 1190, 1199 (Ind.Ct.App.1988). Therefore, in order to prevail in the state court, the Indiana court would have to find that Hagen was an "innocent party." Indiana law requires that drivers on Indiana roads maintain liability insurance. Although the obligation to pay for the liability insurance had been delegated to Budka, this did not relieve Hagen of her responsibility under the law to maintain such insurance. In other words, Hagen had a legal obligation before driving the automobile to be assured that Budka was performing the duty delegated to him, and to enforce that duty if necessary. In addition, the Indiana court would have to interpret the term "judgment" as broad enough to encompass a judgment resulting from Hagen's own negligence.

If the state court interpreted paragraph 11 as not imposing the burden of indemnification on Budka, Hagen would have no claim in this proceeding. Assuming, however, that the state court did find Budka liable for the tort judgment, in the bank-

ruptcy context that obligation cannot be excepted from discharge unless both parties intended that liabilities arising from the hold harmless clause were in the nature of support. In this case, the hold harmless clause was equally applicable to Hagen and Budka. In the event that Hagen had breached her obligation under the terms of the Judgment, she would have been compelled to reimburse Budka for his resulting costs. Imposing this obligation on Hagen would not be compatible with an intent to provide financial support for the children. Consequently, the court finds that at the time the parties entered into the Agreement they did not contemplate that the hold harmless clause would give rise to an obligation in the nature of child support.

The court consequently finds that any liability on the state court judgment which may be imposed on Budka pursuant to the parties' Agreement and paternity judgment is not in the nature of child support. Thus, it does not fall within the scope of § 523(a)(5) and will not be excepted from Budka's discharge. Accordingly, the automatic stay will not be lifted. It is

SO ORDERED.