**In the Matter of Patrick W. GRAY, Brenda G. Gray, Debtors.**

**Patrick W. GRAY, Plaintiff,**

v.

**Gail Prater ENGESSER and Clark County Welfare Department, Defendants.**

**Bankruptcy No. 3–83–02172.**
**Adv. No. 3–83–0806.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 17, 1984.

William N. Merrell, Huber Heights, Ohio, for plaintiff.

Bruce A. Buren, Dayton, Ohio, for defendant.

Thomas R. Trempe, Asst. Pros. Atty., Springfield, Ohio, for Clark County Welfare Dept.

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the court is debtor Patrick W. Gray's Complaint filed on November 30, 1983, requesting a determination that defendants Gail Prater Engesser and the Clark County Welfare Department [Clark County], were in contempt of court for violation of the automatic stay provisions of 11 U.S.C. § 362 and that an obligation owed for child support is dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5). The Court heard the matter on March 30, 1984, and briefs were filed thereafter. The following findings of fact and conclusions of law are based on the testimony and evidence at the hearing and on the pleadings.

Gray and defendant, Gail Prater Engesser, have never been married and there has been no allegation that there was a common law marriage under Ohio law, only that they cohabited during the pertinent years, during which she denied any sexual relations with any other men. She further testified that the relationship finally terminated on October 8, 1981.

On August 31, 1977, Gail Prater (who subsequently married and is now known as Gail Prater Engesser), defendant herein, filed a complaint in paternity against the plaintiff-debtor, Patrick W. Gray, in the Juvenile Division of the Clark County

(Ohio) Common Pleas Court, alleging that Gray was the father of her minor child, Patricia, who had been born on December 21, 1975.

On June 5, 1978, Engesser filed another paternity action against Gray alleging that he was the father of another child who had not yet been born and who was subsequently named Tamazin Lacey Prater. Both paternity actions were filed only after Engesser was threatened with a denial of future benefits from the Aid to Dependent Children [ADC] program by the Clark County Welfare Department, also a defendant herein.

On July 19, 1979, both paternity actions were resolved in a Compromise Agreement, in which Gray agreed to pay to Engesser $15.00 a week for the maintenance, education and keeping of Patricia, while denying that he was the natural father of the child. Further, Engesser agreed, in consideration for Gray's promise to pay $15.00 a week for Patricia, to withdraw all claims against Gray concerning paternity of Tamazin, of whom Gray also denied being the natural father. This Agreement, signed by both Gray and Engesser (then known as Prater), contained no admission as to the paternity of Patricia. A copy of the Compromise Agreement is attached hereto and incorporated herein by reference.

On July 19, 1979, a Judgment Entry was filed in both pending paternity actions, ordering Gray and Engesser to perform all promises made in the Compromise Agreement and finding that the Agreement complied with O.R.C. § 3111.07 (which has since been superseded by § 3111.19). This statute permits a support agreement between the Parties, subject to court approval, without a determination of paternity. This Entry stated in part:

> This matter having come before the Court upon the Complaint of Plaintiff, Gail Prater, an unmarried woman, alleging that Defendant, Patrick Gray, is the natural father of her illegitimate child, Patricia Prater, born December 21, 1975;

and, Plaintiff [sic] having denied that he is the natural father of the said child;

> \*   \*   \*   \*   \*   \*

> It is also ordered that the Clark County Department of Welfare be bound, as Plaintiff Gail Prater is bound, by the terms of this Order.

As in the Compromise Agreement, the Entry made no finding as to the paternity of Patricia. The action was dismissed by the court "with prejudice" on the basis of the support agreement.

In order to continue receiving ADC benefits, Engesser assigned to Clark County her rights to receive these support payments from Gray, pursuant to 42 U.S.C. § 602(a)(26) and O.R.C. § 5107.07.

Subsequently, Gray married and on September 19, 1983, Gray and his wife, Brenda G. Gray, filed a joint petition in bankruptcy for relief under Chapter 7. On their schedules, they listed total debts of $256,438.06 and total property of $9,125.50. On their schedules of unsecured creditors, Gail Prater [Engesser] was listed for "back child support" in the amount of $2,500.00. (In the pretrial order filed with this Court on March 30, 1984, the arrearage amount of unpaid support was amended to be $623.60 payable to Engesser and $1,825 payable to Clark County.)

Since Gray had quit paying child support, Clark County told Engesser that she had to begin a contempt action against Gray for such nonpayment or again risk losing her ADC benefits. On October 21, 1983, such a Complaint for failure to pay support was filed in the Clark County Juvenile Court. After a hearing on that complaint, Gray was cited in contempt on November 21, 1983.

On November 30, 1983, Gray instituted this action requesting a determination that the child support debt be found dischargeable and that Engesser and Clark County be found in contempt of court for instituting

the Juvenile Court contempt action in violation of automatic stay provisions.

At the March 30, 1984 hearing, Engesser claimed that Gray was indeed the father of both her children. She testified that she had had Patricia's last name changed to Gray on her birth certificate when Patricia started school, that she was unrepresented by counsel when the Juvenile Court contempt action was commenced and that she had received notice of Gray's bankruptcy and had informed Clark County thereof.

Two employees of Clark County in testimony denied that it ever had knowledge of Gray's bankruptcy until the contempt hearing itself and that it regularly handles over 500 such support actions.

No supporting evidence, such as genetic tests, was offered to establish Patricia's paternity and thereby substantiate Engesser's testimony.

Gray denied being the father and denied having given permission for Patricia's name change on the birth certificate.

## DECISION

■ Gray claims that the child support obligation is dischargeable under 11 U.S.C. § 523(a)(5), which reads:

§ 523 Exceptions to discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

   *    *    *    *    *    *

(5) to a spouse, former spouse, *or child of the debtor,* for alimony to, maintenance for, or support of such spouse or child, *in connection with a separation agreement, divorce decree, or property settlement agreement,* but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

[emphasis added]

This statute does not address the problem of support for children born out of wedlock. This deficiency is addressed by the 1984 Amendments to the statute, which, after the phrase "in connection with a separation agreement, divorce decree" in the statute, insert "or other order of a court of record." § 454(b) Bankruptcy Amendments and Federal Judgeship Act of 1984.

In the Extra Edition (No. 126) of the Bankruptcy Law Reports (CCH) dated July 16, 1984, entitled "Special Report—Bankruptcy Amendments and Federal Judgeship Act of 1984" on p. 31, the amendments to this section were explained by the comments of Senator Exon on May 21, 1984, in 130 Cong.Rec. S6094. In pertinent part, Senator Exon explained: "Under this revision, the security of support *would depend on parentage* rather than the marital status of the child's natural parents." [emphasis added]

This quote emphasizes the language of § 523(a)(5) as excepting from discharge only those debts "to a spouse, former spouse, or *child of the debtor*" for their support in connection with a marital relationship.

There was prior to the 1984 amendment to the statute a split of authority on the dischargeability of debts for child support arising out of a state court paternity decree. *Compare In Re Fenstermacher,* 31 B.R. 77, BLD (CCH) ¶ 69366, 8 CBC2d 1294 (Bankr.D.Neb.1983); *In Re Marino,* 29 B.R. 797 (N.D.Ind.1983); and *In Re Richards,* BLD (CCH) ¶ 69398, 33 B.R. 56 (Bankr.D.Ore.1983) (holding such debts dischargeable) with *In Re Cain,* 29 B.R. 591 (Bankr.N.D.Ind.1983); *In Re Mojica,* 30 B.R. 925, BLD (CCH) ¶ 69256, 8 CBC2d 997 (Bankr.E.D.N.Y.1983); and *In Re Balthazor,* 36 B.R. 656, 11 B.C.D. 1117 (Bankr.E. D.Wisc.1984) (holding such debts not dischargeable). This court has in previous cases refused to find any basis to extend

the application of the statute beyond its clear meaning. Although finding such debts not dischargeable required considerable warping of the express terms of § 523(a)(5) to attain such a desirable conclusion, the facts *instanter* do not pose the dilemma because there has been no determination of paternity by the state courts.

The Court notes the axioms that a discharge must be granted unless one of the specific exceptions to discharge is proven or the discharge is denied, and that the party objecting to discharge is held to a strict standard of proof.

■ The language of the exception in § 523(a)(5) requires *inter alia* that for a debt to be not dischargeable, it must be to and for the benefit of a child of the debtor. The Court is constrained to follow the clear mandate of the statute.

The evidence before this Court as to the paternity of Patricia is totally inconclusive. The state court Judgment Entry and the Compromise Agreement make no finding of paternity, stating only that Gray denies paternity while Engesser alleges that he is the father. As previously stated by this Court, in a case involving a previous statute (Bankruptcy Act § 17) "the settlement of a paternity suit does not *ipso facto* render the defendant guilty of being the father of the child or liable for child support. Within this framework, it becomes necessary to analyze the facts in the instant case." *Ford v. Cochran,* 1 B.C.D. 550, 552 (Bankr.S.D.Ohio 1975).

At the hearing on the instant case before this Court, the only evidence presented as to paternity was contradictory: Engesser testified under oath that Gray was the father while Gray testified under oath that he was not. Defendants presented no other evidence to support their claim of paternity. Thus, defendants have failed to meet their burden of proving the paternity required by § 523(a)(5). (Defendants have cited numerous cases, but all are distinguishable in that paternity had been proven, acknowledged or not questioned in all the cited cases.) Having so failed to establish the requirements for an exception to

discharge, this Court cannot, in light of the statutory language, except from discharge a debt to support a child not proven to be fathered by the debtor.

■ Turning now to the contempt issue, the Court notes that Engesser was unrepresented when forced to commence the contempt action for nonpayment of support by Clark County. Thus, she acted in violation of the stay as an innocent and uninformed instrument of the public agency, not meriting sanctions. The welfare of her child was her paramount motivation.

■ It is not questioned that Clark County caused the action to collect the child support arrearage to be commenced, thus violating the automatic stay provisions found in § 362. However, in light of the conflicting testimony as to its knowledge of the bankruptcy proceedings, its caseload and its mistaken belief that it was acting properly, the Court finds that, although in technical violation of the law, no sanctions for contempt will be imposed against Clark County, other than for Gray's attorney's fees in defending the contempt action in Juvenile Court and in bringing this action.

It must be emphasized that the ADC contributions to the child's support are not directed to the benefit of the mother. Rather, it is the unfortunate child's welfare which is at stake. The Compromise Agreement does not affect any liability, if any, the putative father may later be found to have to the child by a state court of competent jurisdiction. The Agreement merely releases Patrick Gray from all claims to Gail Prater "on account of the birth of the said child Patricia Prater and the said child Tamazin Lacey Prater...." This Agreement was executed pursuant to then Ohio Revised Code § 3111.07, which expressly provides: "This section does not bar prosecution of the accused under any statute providing for prosecution and punishment for the nonsupport of legitimate or illegitimate children." No state court has absolved the debtor from liability to the child or has determined the question of paterni-

ty, which he now denies. Further, the child was not made a party to the state court proceedings as now required by the superseding Ohio statutes.

This court has merely determined the question of dischargeability as between the debtor as putative father and the mother based upon the support agreement. The issue of paternity and the rights of the child must be determined in the state courts. Although promoting multifarious litigation and the accompanying waste of time and expenditures to the litigants, the bankruptcy courts in the future (in light of the expressed intent of the Congress to remove state law issues from the bankruptcy courts by the mandatory abstention provisions incorporated into the 1984 Amendment to 28 U.S.C. § 1334(c)(2); P.L. 98–353), should abstain from trials to establish paternity in connection with dischargeability actions.

## APPENDIX

## IN THE COURT OF COMMON PLEAS, CLARK COUNTY, OHIO

## JUVENILE DIVISION

Gail Prater  :

   Plaintiff  :

   vs.  : Case No.  77–851
                and
Patrick Gray  :  78–566

   Defendant  : COMPROMISE AGREEMENT

KNOW ALL MEN BY THESE PRESENTS, that Gail Prater, on or about December 21, 1975, delivered a female child, now named Patricia Prater and has charged, by Complaint filed in Case No. 77–851 in the Juvenile Division of the Court of Common Pleas of Clark County, Ohio, Patrick Gray with being the father thereof; that, said Patrick Gray denies that he is the natural father of said Patricia Prater; and, that Gail Prater and Patrick Gray desire the memorialize their agreement with respect to the full satisfaction of all claims the said Gail Prater, or others acting on her behalf or in her stead, may have against

the said Patrick Gray arising out of the said Complaint and with respect to the support and maintenance of the said child, Patricia Prater.

Further, that Gail Prater, on or about January 13, 1979, delivered of a female child, now named Tamazin Lacey Prater, and has charged, by Complaint filed in Case No. 78–566 in the Juvenile Division of the Court of Common Pleas of Clark County, Ohio, Patrick Gray with being the father thereof; that, said Patrick Gray denies that he is the natural father of said Tamazin Lacey Prater; and, that Gail Prater and Patrick Gray desire to memorialize their agreement with respect to the full satisfaction of all claims the said Gail Prater, or others acting on her behalf, or in her stead, may have against the said Patrick Gray arising out of the said Complaint and with respect to the support and maintenance of the said child, Tamazin Lacey Prater.

The said Gail Prater hereby agrees to receive from the said Patrick Gray, and the said Patrick Gray hereby agrees to pay to the said Gail Prater, in full satisfaction and compromise of all claims, including expenses of pregnancy, confinement, hospitalization, and birth of the said child Patricia Prater, that Gail Prater, or others acting on her behalf or in her stead, have or may have against the said Patrick Gray, arising from or in connection with the aforesaid Complaint of Gail Prater against Patrick Gray in regard to his alleged paternity of the child Patricia Prater, the sum of Fifteen Dollars ($15.00) each week, for the maintenance, education and keeping of said child, commencing on the date this Compromise Agreement is accepted by the Court and the aforesaid Complaints in Case No. 77–851 and Case No. 78–566 are withdrawn pursuant to law and dismissed by final order of the Court, and continuing until said child, Patricia Prater, shall reach her legal majority or until said child, prior thereto, shall die, be adopted, emancipated, or become self-supporting, in which instance the said weekly payments shall cease and the said Patrick Gray shall no longer be obligated concerning them or any

other claims of the said Gail Prater in these causes.

The said Gail Prater also agrees that, in consideration of the promise of Patrick Gray to pay the aforesaid Fifteen Dollars ($15.00) each week for the maintenance, education and keeping of the said child Patricia Prater, Gail Prater will withdraw, seek dismissal of, and not again institute against Patrick Gray, the claims or allegations concerning the child Tamazin Lacey Prater made in Case No. 78–566. The said Gail Prater accepts as full and complete consideration for said compromise and withdrawal of her Complaint in Case No. 78–566 the promise of Patrick Gray to pay Fifteen Dollars ($15.00) each week toward the support and maintenance of the child Patricia Prater. The said Patrick Gray, in reliance on the said promise of Gail Prater to withdraw her Complaints in Case No. 77–851 and Case No. 78–566, has agreed and bound himself to make the aforesaid payment of Fifteen Dollars ($15.00) each week toward the maintenance and support of the child Patricia Prater. The exchange of mutual promises by Patrick Gray and Gail Prater, receipt of which by each is hereby acknowledged, are to each good, sufficient, full and satisfactory consideration for their respective undertakings as expressed herein, and are to each substantial and complete consideration for their compromise of the claims of Gail Prater, or others on her behalf or in her stead, in Case No. 77–851 and Case No. 78–566, as expressed above, and constitute a compromise settlement of said claims pursuant to Section 3111.07, Ohio Revised Code.

The said Gail Prater, for and in consideration of the said promise of Patrick Gray, does remise, release, quitclaim and forever discharge the said Patrick Gray, his heirs, executors, and administrators, of and from all manner of claims at law or equity, known or unknown, now brought or hereafter to be brought against him and also of and from all debts, payments, accounts, claims, and demands, whatsoever, the said Gail Prater ever had, now has, or hereafter shall or may have against the said Patrick Gray, his heirs, executors, and administrators, for or on account of the birth of the said child Patricia Prater and the said child Tamazin Lacey Prater, or for or by reason of any matter, cause, or thing whatsoever, touching or concerning the same, for herself and for others acting on her behalf or in her stead.

It is further agreed by the parties that the Clark County Department of Welfare shall receive the said payments from Patrick Gray on behalf of the said Gail Prater, and that said Department shall be bound by the Compromise of the parties.

Signed this 16th day of July, 1979.

Patrick Gray   July 10, 1979
PATRICK GRAY
Gail R. Prater
GAIL PRATER

STATE OF OHIO   :
                      :SS
COUNTY OF CLARK:

Before me, a Notary Public, in and for said county, personally appeared the above named, Patrick Gray, who acknowledges that he did sign the foregoing Compromise Agreement and that the same is his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal at Springfield, Ohio, this 10th day of July, 1979.

Thomas J. Grady
NOTARY PUBLIC

STATE OF OHIO   :
                      :SS
COUNTY OF CLARK:

Before me, a Notary Public, in and for said county, personally appeared the above named, Gail Prater, who acknowledges that she did sign the foregoing Compromise Agreement and that the same is her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal at Springfield, Ohio, this 16th day of July, 1979.

Shirley A. Erwin
NOTARY PUBLIC
Shirley A. Erwin
my commission expires July 10, 1984.