**In the Matter of Wade S. SEIBERT and Deanne M. Seibert, Debtors–Appellees,**

**Appeal of GREEN COUNTY, STATE of WISCONSIN.**

No. 88–1829.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 9, 1990.

Decided Sept. 19, 1990.

As Amended Sept. 20, 1990.

F. Thomas Creeron, Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for appellant.

Brian C. Schneider, Madison, Wis., for debtors-appellees.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

At issue is whether the expenses of pregnancy and confinement and the court costs in a state paternity action, both of which the debtor-father was ordered to pay pursuant to a state court paternity judgment, are dischargeable in bankruptcy under 11 U.S.C. § 523(a). Both the bankruptcy court and the district court concluded that these expenses were dischargeable. We reverse.

## I.

Wade Seibert and Deanne Schneider cohabited in Green County, Wisconsin in 1985. Deanne became pregnant and obtained an Aid to Families with Dependent Children (AFDC) pregnancy allowance and medical assistance from the Green County Department of Social Services in September and October of 1985, respectively. *See* Wis.Stat. § 49.46 (pregnant woman who would otherwise be eligible for AFDC if the dependent child was born is eligible for medical assistance if her pregnancy is verified). As a condition of eligibility for public assistance, Deanne assigned her rights and the child's rights to financial support to the state. *See* 42 U.S.C. § 602(a)(26)(A); Wis.Stat. § 49.19(4)(h)1.b.[1]

Green County began paternity proceedings against Wade Seibert. At the paternity hearing, the parties stipulated that Wade was baby Derek's father, that Deanne's medical expenses totaled $2,749.96, and that the court costs of the paternity action amounted to $65.78. The county waived its right to collect past due child support from Wade. The court entered judgment establishing Wade's paternity of Derek and ordering Wade to reimburse Green County for the $2,749.96 in

medical expenses and to pay the $65.78 in court costs. Since Wade and Deanne were to be married on May 19, 1986, the court postponed creating a repayment schedule until September of 1986.

One week prior to the repayment hearing, the Seiberts declared bankruptcy under Chapter 7 and sought a determination that the pregnancy and confinement expenses and court costs were dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5). Section 523(a)(5) provides that a debt owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court" is not dischargeable in bankruptcy.

In the bankruptcy court, the parties disputed whether the debt was owed to a spouse, ex-spouse, or child, whether it was in the nature of support, and whether it was the result of a court order. The bankruptcy court determined that the debt was not in the nature of support and was owed to the mother of the child, not to the child, a spouse, or ex-spouse.[2] Accordingly, the court granted judgment to the Seiberts and discharged the debt. The district court held that the pregnancy and confinement expenses "may properly be classified as support ... but as support of the mother." The district court also held that the costs associated with the paternity action were dischargeable, an issue the bankruptcy court failed to address. The state timely appealed.

## II.

Because the parties stipulated to the historical facts, the issues before the

---

1. The federal AFDC statute required Deanne to "assign to the State any rights to support from another person ... in [her] own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid ... which have accrued at the time such assignment is executed." 42 U.S.C. § 602(a)(26)(A). The state statute required her to assign to the state "any right of the parent or any dependent child to support or maintenance from any other person, including ... any right to amounts accruing during the time aid is paid." Wis.Stat.

§ 49.19(4)(h)1.b. Both statutes also required Deanne to assist the state in establishing paternity and collecting the support that would be due her or the child. 42 U.S.C. § 602(a)(26)(B); Wis.Stat. § 49.19(4)(h)1.a.

2. The Seiberts were not married at the time the pregnancy and confinement expenses were incurred, nor at the time Deanne assigned her rights to support to the county.

bankruptcy court and district court involved solely questions of statutory interpretation, that is, questions of law. Accordingly, we review the district court's interpretation of the bankruptcy statute *de novo*. *See In re Sanderfoot*, 899 F.2d 598, 600 (7th Cir.1990).

 At issue is whether expenses of "pregnancy and confinement" are a debt owed to a child for the child's support.[3] As a general matter, medical expenses are in the nature of support, *see In re Valls*, 79 B.R. 270, 271 (Bkrtcy.W.D.La.1987) (costs of pregnancy, delivery, pre- and post-natal care and blood test are in the nature of support); *In re Scannell*, 60 B.R. 562, 565–66 (Bkrtcy.W.D.Wis.1986) (medical and dental bills are in the nature of support to the child even though owed to third party); *In re Balthazor*, 36 B.R. 656, 659 (Bkrtcy.E.D. Wis.1984) (medical expenses incurred for pregnancy and hospital confinement are in the nature of support);[4] however, what is important is *to whom* is the debt owed, that is, for whose support are pregnancy and confinement expenses incurred—the mother's or the child's or both.[5]

The courts that have considered the issue are split. In *In re Brown*, 43 B.R. 613 (Bkrtcy.M.D.Tenn.1984), the court concluded that the debt was owed to the mother. The court explained: "It cannot be said that these debts are owed to the child for support. The child did not incur medical expenses or legal fees—the mother did. The debt may be for 'support,' but it is support for the mother not for the child." *Id.* at 616. This was the extent of the *Brown* court's analysis. This narrow interpretation of what is in the nature of support does not confront the fact that it is solely because of the pregnancy that the mother incurs the medical expenses and that prenatal care and a hospital delivery benefit both the mother and child.

The other courts that have considered the issue of the dischargeability of the ex-

3. The record does not indicate whether the $2,749.96 in "pregnancy and confinement" expenses represent medical expenses incurred solely by the mother, both before and after birth, or whether they include an amount for medical expenses incurred by the baby after birth. Green County has not argued that the expenses are divisible or that they relate to medical expenses of the child after birth. Green County has expressly waived past child support.

4. Appellees contend that the expenses were not in the nature of support. Although the district court did not address this issue or the issue of whether the debt was incurred in connection with an "order of a court of record," our review is *de novo*, and we do address these. For a discussion of the requirement that the debt be incurred in connection with a court order, *see infra*.

Under the bankruptcy laws, courts have found that not only support in the traditional sense of periodic child support is nondischargeable, but that debts in the nature of support are also nondischargeable. *See, e.g., In re Harrell*, 754 F.2d 902, 904 (11th Cir.1985); *Valls*, 79 B.R. at 271. We conclude that Wade's obligation to pay the pregnancy and confinement expenses is in the nature of support. We note the respective earning power of the parents. Deanne was not employed when she gave birth to Derek. Her income consisted of monthly AFDC payments of $448. Deanne was unable to support herself or to pay the expenses incurred in Derek's birth. Wade, however, was employed as a press opera-

tor, earning $7.39 an hour, forty hours per week. To require Wade to pay these expenses does not appear to be unduly burdensome. We also note the context in which the obligation arose. Wade's obligation was established in a state court proceeding establishing his paternity of Derek and was based on a legal duty of support. Although the pregnancy and confinement expenses were listed in a separate paragraph of the paternity judgment, this is not determinative. *See Balthazor*, 36 B.R. at 659. These expenses were part of Wade's overall support obligation. "'The medical expenses incurred in the birth of a child are closer to the support consideration than providing a roof over his family—debts on a residence or furnishings—or legal services.'" *Id.* (quoting *In re Breaux*, 8 B.R. 218, 220 (Bkrtcy.W.D.Wis.1981)).

5. The fact that the debt was assigned to the state does not affect its dischargeability. Appellees argue that but for the assignment, the debt would be owed to the hospital, a third party, and not directly to the child. The statutory requirement that the debt be owed to a child of the debtor is to be read broadly. *See In re Jones*, 94 B.R. 99, 102 (Bkrtcy.N.D.Ohio 1988). "A strict reading of § 523(a)(5) as 'to whom' payments are made defeats both state statutes and the intent of the Code because 'obligations arising out of the family relationship and the stability generated thereby outweighs [sic] the general bankruptcy goal of a fresh start.'" *In re Huber*, 80 B.R. 531, 533 (Bkrtcy.D.Colo.1987) (quoting *In re Morris*, 14 B.R. 217, 220 (Bkrtcy. D.Colo.1981)).

penses of pregnancy and confinement have concluded that such expenses are not dischargeable since they are in the nature of support. Only one of these courts, however, has expressly found that the medical expenses of the mother relating to the child's birth and subsequent care, coupled with an amount for past child support, constituted a debt to the child in the nature of support. *See In re Wilson*, 109 B.R. 283, 284 (Bkrtcy.S.D.Ohio 1989). The remaining courts merely imply that the debt is owed to the child, *see Valls*, 79 B.R. at 271, *Balthazor*, 36 B.R. at 659, *In re Breaux*, 8 B.R. 218, 220 (Bkrtcy.W.D.Wis.1981), or else the parties do not dispute the characterization of such medical expenses as a debt to the child, *see In re Pierson*, 47 B.R. 258 (Bkrtcy.D.Neb.1985), *In re Cain*, 29 B.R. 591 (Bkrtcy.N.D.Ind.1983).

The district court in this case relied on *Brown* and on the Wisconsin statute dealing with paternity judgments. *See* Wis. Stat. § 767.51 (1985–86). The statute discusses the expenses of the mother's pregnancy and confinement in one subsection, *see* § 767.51(3), and addresses the father's liability for periodic child support and past support in another subsection, *see* § 767.51(4). The district court stated that the structure of the statute "plainly implies that support of the child is entirely separate from expenses of pregnancy and confinement." In support of this position, the district court relied on a decision by the Supreme Court of Wisconsin which interpreted the predecessor to section 767.51 and held that the expenses of pregnancy and confinement were owed to the mother while support was only owed to the child after birth. *See Larson v. Wisconsin Dep't of Indus., Labor & Human Relations*, 76 Wis.2d 595, 619, 252 N.W.2d 33, 44 (1977).

▪ We conclude that the district court relied too heavily on the Wisconsin authorities. Although federal courts may refer to the reasoning of the well-established law of alimony and support of the states, *see In re Spong*, 661 F.2d 6, 9 (2d Cir.1981), Congress has made it clear that questions of dischargeability and the interpretation of

the bankruptcy code are to be determined under the federal bankruptcy laws, not state law. *See In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983); S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865; H.R.Rep. No. 595, 95th Cong., 1st Sess. 364, *reprinted in* U.S.Code Cong. & Admin.News 5963, 6320. Under federal bankruptcy law, a debtor in Wisconsin should not fare any better or worse than one in California or New Hampshire, for example, simply because of the fortuitous influences that cause a state legislature to structure its statute in a particular way. By determining dischargeability with reference to federal bankruptcy law, we ensure uniformity of treatment of debtors who are similarly situated.

▪ Several considerations persuade us that the better view is that the pregnancy and confinement expenses are part of the paternity obligation owed to the child. First, but for the pregnancy, Deanne would not have incurred medical and confinement expenses associated with baby Derek's birth. These medical services, although performed upon the mother, necessarily and directly benefit the child as well.

Second, Deanne sought AFDC benefits and public medical assistance for which she would not have been eligible but for the pregnancy. *Cf. In re Gray*, 41 B.R. 759, 763 (Bkrtcy.S.D.Ohio 1984) (AFDC "contributions to the child's support are not directed to the benefit of the mother. Rather, it is the unfortunate child's welfare which is at stake."). As a condition of receiving this aid, Deanne assigned all rights to payment for medical expenses to the state. The state court ordered Wade, in recognition and fulfillment of his duty to support his child, to repay the state for the AFDC and medical assistance Deanne received, and the legislative history of the Social Security assignment provision provides that "a child support obligation assigned to a state as a condition of AFDC eligibility is not discharged in bankruptcy." *See* 42 U.S.C. § 656(b); *see also In re Stovall*, 721 F.2d 1133, 1135–36 (7th Cir.1983) (examining congressional intent concerning bank-

ruptcy and the assignment of "all rights to support").

Third, "the policy of giving the debtor a fresh start should not be interpreted to place an unmarried father in a better position with respect to dischargeability than a married father." *Valls*, 79 B.R. at 271. A father should not be allowed to avoid liability for the mother's medical care arising from the birth of their child merely because the parents did not marry until after their child was born or did not marry at all. Although these facts present a close case, we hold that pregnancy and confinement expenses constitute a debt in the nature of support to the child.

■ We also conclude that the obligation was incurred "in connection with ... [an] order of a court of record." 11 U.S.C. § 523(a)(5). Wade's obligation was incurred in connection with the state court paternity judgment. The statutory requirement is straightforward, and we conclude that it is satisfied in this case. The 1984 amendment to § 523(a)(5), which added the italicized language "in connection with a separation agreement, divorce decree, or *other order of a court of record,*" was intended to address the problem of support for children born outside of marriage. The purpose of this amendment was to make the security of support depend on parentage, rather than the marital status of the biological parents. *See In re Gray*, 41 B.R. 759, 762 (Bkrtcy.S.D.Ohio 1984). Because we find that Wade's obligation to pay the pregnancy and confinement expenses are in the nature of support to the child and were incurred in connection with a paternity judgment, we hold that the debt is nondischargeable.

■ We now turn to the question whether the costs associated with the paternity action are dischargeable in bankruptcy. This court recently examined § 523(a)(5) in the context of legal expenses incurred by a mother seeking child support from the father. *See In re Rios*, 901 F.2d 71 (7th Cir.1990). We agreed with the reasoning

of the district court in *In re Lindberg*, 92 B.R. 481 (D.Colo.1988), that a "child's expenses of collection are part of the underlying obligation." *Rios*, 901 F.2d at 72;[6] *In re Barbre*, 91 B.R. 846, 847 (Bkrtcy.S.D.Ill. 1988); *see also Valls*, 79 B.R. at 271 (blood tests and other necessities in paternity action are nondischargeable); *Cain*, 29 B.R. at 597 (same). Accordingly, we hold that the $65.78 in court costs are nondischargeable.

### III.

For the foregoing reasons, we hold that the pregnancy and confinement expenses and court costs incurred in the state paternity action are not dischargeable in bankruptcy. Accordingly, we reverse the judgment of the district court.

REVERSED.

---

**6.** However, in *Rios*, we held that the mother's contract with the attorney "did not generate a debt" to the child since the mother was not legally obligated to pursue the paternity action. *Rios*, 901 F.2d at 72–73.