**In re Deborah Lynn SCHWEITZER, Debtor.**

**Vincent L. Schweitzer, Plaintiff,**

**v.**

**Deborah Lynn Schweitzer, Defendant.**

Bankruptcy No. 06–53946.
Adversary No. 06–2600.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

June 4, 2007.

---

Nannette J.B. Dean, Columbus, OH, Attorney for Plaintiff.

Vincent Schweitzer, Grove City, OH, pro se.

Michael T. Gunner, Columbus, OH, Attorney for Defendant/Debtor.

Deborah Lynn Schweitzer, Marysville, OH, pro se.

Larry J. McClatchey, Chapter 7 Trustee, Columbus, OH.

Office of the U.S. Trustee, Columbus, OH.

### *MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

JOHN E. HOFFMAN, Jr., Bankruptcy Judge.

Vincent Schweitzer ("Vincent") initiated this adversary proceeding against Deborah Schweitzer, his former spouse and the debtor in this Chapter 7 case ("Deborah" or "Debtor"), seeking a judgment declaring that (1) Deborah's obligation under the parties' separation agreement to hold him harmless on their joint mortgage indebtedness is nondischargeable under 11 U.S.C. § 523(a)(15),[1] and (2) Deborah's hold harmless obligation with respect to the parties' joint Chase Bank ("Chase") credit card account is nondischargeable under both 11 U.S.C. § 523(a)(2)(A) and (a)(15). Before the Court are Vincent's Motion for Summary Judgment ("Motion") (Doc. 13), filed on February 22, 2007; Deborah's response ("Response") (Doc. 18), filed on March 13, 2007; and Vincent's reply ("Reply") (Doc. 19), filed on March 22, 2007. The Motion was filed for the limited purpose of obtaining summary judgment on the second and third claims for relief asserted in Vincent's complaint—the nondischargeability claims brought under § 523(a)(15). Because Deborah's hold harmless obligations are debts incurred in connection with a separation agreement within the meaning of § 523(a)(15), they are excepted from discharge. Vincent accordingly is entitled to summary judgment on his claims for relief based on § 523(a)(15).

1. Deborah Schweitzer filed her Chapter 7 petition on July 31, 2006. Thus, the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), generally effective October 17, 2005, is applicable to this proceeding. All statutory provisions cited in this memorandum opinion refer to the Bankruptcy Code as amended by BAPCPA.

## I. Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## II. Factual and Procedural Background

The material facts in this case are not in dispute and are drawn from the Motion, Response and Reply, the supporting exhibits, and the schedules and other filings made in the Debtor's underlying Chapter 7 case.

Deborah and Vincent were married in October 1991 and separated in October 2004. At the time of their separation they jointly owned a home located at 211 Sorensen Drive, Marysville, Ohio. Wells Fargo Home Mortgage ("Wells Fargo") and Homecomings Financial ("Homecomings") held first and second mortgages, respectively, on the property. Under the Petition for Dissolution of Marriage and a Separation Agreement ("Separation Agreement"), signed by Vincent and Deborah on October 14, 2004, Deborah was awarded the marital residence and agreed to hold Vincent harmless on the parties' joint mortgage indebtedness.[2] In addition, each party agreed to be responsible for the debts incurred in his/her own name and to hold the other party harmless from liability on these individual obligations. The Separation Agreement also prohibited each party from incurring debts or obligations upon the credit of the other and provided that in the event any such debt was incurred, the party incurring the debt would indemnify and hold the other party harmless.[3] The marriage was dissolved in November 2004.

In July 2005, Deborah obtained cash advances in the aggregate amount of $21,000 by drawing three checks on the joint Chase credit card account. In addition to the cash advances, she used the credit card to charge nearly $1,000 in additional purchases during August 2005. Deborah made monthly payments to Chase on this credit card debt in September, October and November of 2005, but made no payments thereafter. Vincent, although he had never used the Chase account, made payments on the account in an effort to protect his credit standing.

In violation of the provision in the Separation Agreement requiring her to "remove [Vincent's] name from the mortgage[s]," and to take over all other financial responsibilities for the marital

---

**2.** Paragraph 4 of the Separation Agreement provides:

> 4. *Real Estate*
>
> . . . .
>
> On or before October 31, 2005, Wife shall remove Husband's name from the mortgage and all other financial responsibilities for said real estate. Within seven days of having his name so removed, Husband shall, by appropriate quitclaim deed, convey to Wife all of his right, title and interest in and to the aforesaid real estate. . . .
>
> If Wife does not remove Husband's name from the mortgage and all other financial responsibilities by October 31, 2005, the property shall be listed for sale with a real estate broker acceptable to both parties. . . .
>
> Wife shall have sole and exclusive use of the real estate and shall assume all taxes, utilities, insurance and mortgage obligations on such property and hold Husband harmless thereon.

Separation Agreement (Complaint, Ex. A) ¶ 4.

**3.** Paragraph 15 of the Separation Agreement states:

> 15. *Non–Use of Other's Credit.* Neither Husband nor Wife may hereafter incur any debts or obligations upon the credit of the other and each shall indemnify, defend and save the other absolutely harmless from any debt or obligation so charged or otherwise incurred.

Separation Agreement ¶ 15.

residence, Separation Agreement ¶ 4, Deborah failed to refinance the mortgages. Vincent therefore remained liable on the mortgage debt. In January 2006, Deborah defaulted on her mortgage payments. On March 24, 2006, Vincent initiated a contempt proceeding in the Franklin County Court of Common Pleas, Domestic Relations Division, alleging that Deborah had violated the terms of the Separation Agreement. On June 9, 2006, Wells Fargo initiated foreclosure proceedings, naming both Deborah and Vincent as defendants.

On July 31, 2006, Deborah filed a petition for relief under Chapter 7 of the Bankruptcy Code. Vincent commenced this adversary proceeding on September 28, 2006. As set forth above, Vincent's complaint alleges that Deborah's marital debts are nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(15). He also seeks a money judgment in the amount of $24,128.22, plus interest on the Chase debt, any deficiency balance resulting from the mortgage foreclosure, and "$1,000 for each incidence of derogatory information reported on [Vincent's] credit report." Compl. at 3–4.

As previously stated, the Motion seeks summary judgment only as to the second and third claims for relief stated in Vincent's complaint—his nondischargeability claims based on § 523(a)(15).

### III. Legal Analysis

#### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056). On motion for summary judgment, the inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 511 (6th Cir.2003); *McKenzie v. Bell-South Telecomms., Inc.,* 219 F.3d 508, 512 (6th Cir.2000). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party satisfies its burden, the non-moving party must then "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)); *Lanier v. Bryant,* 332 F.3d 999, 1003 (6th Cir.2003); *McKenzie,* 219 F.3d at 512. The non-moving party may not meet this burden by resting on mere allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Mounts v. Grand Trunk W.R.R.,* 198 F.3d 578, 580 (6th Cir.2000). "Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact." *McKenzie,* 219 F.3d at 512 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A material fact is one that has the "potential to affect the outcome of the suit under applicable law." *FDIC v. Anchor Props.,* 13 F.3d 27, 30 (1st Cir.1994) (citations and internal quotation marks omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of

the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. *See also Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir.1992).

## B. Hold Harmless Agreement—Chase Credit Card Debt

Under the terms of the Separation Agreement, neither spouse was permitted to use the credit of the other to incur any indebtedness. If either spouse violated this arrangement, the Separation Agreement provided that the spouse incurring the debt would "save the other absolutely harmless from any debt or obligation so charged or otherwise incurred." Separation Agreement ¶ 15. After the divorce was final, Deborah used the joint Chase credit card to take the cash advances and incur additional charges described above. At issue here is whether Deborah's obligation to hold Vincent harmless on the Chase debt is nondischargeable under § 523(a)(15).

■ Section 523 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . .

(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(15). To be excepted from discharge under this provision, the debt must: (1) be to a spouse, former spouse, or child of the debtor; (2) not be of the type described in § 523(a)(5), i.e., not a domestic support obligation; and (3) have been incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court. *Id.* The party contesting the dischargeability of a debt has the burden of proving these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Hart v. Molino (In re Molino),* 225 B.R. 904, 907 (6th Cir. BAP 1998); *Hammermeister v. Hammermeister (In re Hammermeister),* 270 B.R. 863, 876 (Bankr.S.D.Ohio 2001).

■ Deborah's obligation to hold Vincent harmless on the Chase credit card debt meets the first two prongs of the statute. First, Vincent is Deborah's former spouse. And despite her argument that the debts are not owed to Vincent, but to Chase, the Separation Agreement's hold harmless provisions require Deborah to indemnify Vincent for the credit card obligation. The hold harmless provisions contained in the Separation Agreement create a new debt from Deborah to Vincent. *See Owens v. Owens (In re Owens),* 191 B.R. 669, 673 (Bankr.E.D.Ky.1996) (hold harmless language used in property settlement "creates a new indebtedness" between debtor and former spouse).

■ Second, Deborah's hold harmless obligation with respect to the Chase credit card is not a debt "for a domestic support obligation" that would be excepted from discharge under § 523(a)(5). A "domestic support obligation" as defined in § 101(14A) "means a debt that . . . is . . . in the nature of alimony, maintenance, or support" of the debtor's spouse, former spouse, or child. 11 U.S.C. § 101(14A)(B).

The Separation Agreement specifically states that "[n]either party shall pay any spousal support to the other. . . . This agreement is a property division and no part is to be construed as alimony[.]" Separation Agreement ¶ 2. Thus, it is clear that the hold harmless provisions of the Separation Agreement were not intended to create a support obligation.

■ According to Deborah, the debts in question are not excepted from discharge by § 523(a)(15) because they were not incurred in the course of a divorce or separation or in connection with a separation agreement or divorce decree. In support of this position, she advances two arguments. First, she contends that the phrase "in connection with a separation agreement, divorce decree, or other order of a court of record" was added to § 523(a)(5) and (a)(15) by the Bankruptcy Amendments of 1984 ("1984 Amendments") specifically to address the dischargeability of support obligations for children born outside of marriage. Because that type of debt—a support obligation for a child born outside of marriage—is not at issue in this case, Deborah maintains that § 523(a)(15) is not applicable. Second, Deborah asserts that because she took the cash advances and made the charges on the Chase account several months post-dissolution, the debts did not arise *during* the course of a divorce or separation and are thus were not incurred "in connection" with a separation agreement within the meaning of § 523(a)(15).

As support for her first argument, Deborah cites the following language from the bankruptcy court's decision in *Williams v. Kemp (In re Kemp)*, 234 B.R. 461, 467 (Bankr.W.D.Mo.), *aff'd in part, rev'd in part*, 242 B.R. 178 (8th Cir. BAP 1999): "The 1984 amendment to § 523(a)(5), which added the . . . language 'in connection with a separation agreement, divorce decree, or other order of a court of record,' was intended to address the problem of support for children born outside of marriage." *Id.* at 467 (citing *In re Seibert*, 914 F.2d 102, 107 (7th Cir.1990)). The court in *Kemp*, however, did not include the full quotation from the Seventh Circuit's decision in *Seibert*, which reads:

> The 1984 amendment to § 523(a)(5), which added the italicized language "in connection with a separation agreement, divorce decree, or *other order of a court of record*," was intended to address the problem of support for children born outside of marriage. The purpose of this amendment was to make the security of support depend on parentage, rather than the marital status of the biological parents.

*Seibert*, 914 F.2d at 107 (emphasis in original). Only the italicized language "or other order of a court of record" was added by the 1984 Amendments. As the *Seibert* court noted, the amendment's purpose was to link the security of support to "parentage, rather than the marital status of the biological parents." *Id.* Thus, inclusion of this additional language in § 523(a)(5) (which is identical to the language added to § 523(a)(15)), simply broadened the scope of the exception to discharge for support obligations by placing state court paternity judgments on equal footing with support obligations imposed by a divorce decree or separation agreement—after the 1984 Amendments, both were excepted from discharge by § 523(a)(5).[4] Contrary

---

4. As amended by BAPCPA, § 523(a)(5) now excepts from discharge all "domestic support obligations," a term that includes debts to a spouse, former spouse or child of the debtor, whether established by a separation agreement, divorce decree, property settlement or "an order of a court of record." 11 U.S.C. § 101(14A). Thus, the effect of the 1984

to Deborah's suggestion, the 1984 Amendments were intended to expand the exceptions to discharge contained in § 523(a)(5) and (a)(15)—not to confine the exceptions solely to support obligations for children born outside of marriage.

Here, the Separation Agreement imposed on Deborah the obligation to indemnify Vincent and hold him harmless for any charges made by her on their joint credit card. This obligation falls squarely within the exception to discharge set forth in § 523(a)(15)—it is a debt incurred in connection with a separation agreement. *See Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 202–03 (6th Cir. BAP 1998) ("A debtor's obligation as part of a decree or separation agreement . . . to hold a spouse 'harmless' on a third-party obligation [is an example] of incurring a debt which satisfies the qualifying language of § 523(a)(15)[.]"); *Anderson v. Anderson (In re Anderson)*, 2001 WL 34652937 at *3 (Bankr.D.Kan. Jan.11, 2001) ("Many courts have found that a debtor's obligation under a divorce decree or separation agreement . . . to hold a spouse 'harmless' on a third-party debt qualifies under § 523(a)(15)."); *Owens*, 191 B.R. at 673–74 ("[T]he hold harmless language used in [the property settlement agreement] appears to create a new obligation as contemplated by [§ 523(a)(15)]."); *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr.W.D.Mo. 1995) ("If . . . the [property settlement] agreement had provided that debtor would indemnify and hold plaintiff harmless . . . a new obligation might have been incurred."). Because Deborah's obligation to hold Vincent harmless on the Chase credit card obligation arose directly from the stated terms of the Separation Agreement, it is a debt incurred in connection with a separation agreement and is excepted from discharge by § 523(a)(15).

■ The fact that the credit card charges were incurred after the parties' divorce became final does not alter the Court's conclusion. Several bankruptcy courts have addressed the situation in which a debtor incurred post-divorce credit card debt to the detriment of a non-filing former spouse. In *Melton v. Melton (In re Melton)*, 228 B.R. 641 (Bankr.N.D.Ohio 1998), a case decided under the pre-BAPCPA, "balancing test" version of § 523(a)(15), the divorce decree provided that "[t]he parties hereto agree to pay all debts incurred by him or her subsequent to the date of their separation, and to save the other party harmless from any liability thereon." *Id.* at 643. After the divorce was finalized, the debtor reactivated a joint credit card account and made charges on the card. The *Melton* court found that the debt was "undisputably incurred in connection with the parties' divorce decree," *id.* at 645, and held that the debtor's obligation to repay his former wife for the debts incurred was nondischargeable. *Id.* at 647. *See also Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312, 316–17 (Bankr. W.D.Ark.1996) (holding that a debtor's obligation to indemnify her former husband for credit card debts she incurred post-divorce was nondischargeable under § 523(a)(15), despite the absence of "hold harmless" language, because the divorce decree had provided that each party would be responsible for any debts incurred by that party after their divorce); *Baker v. Baker (In re Baker)*, 274 B.R. 176 (Bankr. D.S.C.2000) (same).

As in *Melton, Schmitt* and *Baker*, the Separation Agreement in this case con-

Amendments—to broaden § 523(a)(15)'s exception to discharge to include support obligations for children born outside of marriage—has been carried forward in the post-BAPCPA version of § 523(a)(5).

tains a provision governing debts incurred post-divorce:

> Neither Husband nor Wife may hereafter incur any debts or obligations upon the credit of the other and each shall indemnify, defend and save the other absolutely harmless from any debt or obligation so charged or otherwise incurred.

Separation Agreement ¶ 15. The Separation Agreement expressly prohibits either spouse from using the other's credit. It also provides for indemnification if such debts are incurred in violation of this provision. The situation that gives rise to this adversary proceeding—in which Deborah has incurred debt for which Vincent may be held jointly liable—is precisely the type of scenario that the hold harmless provision was intended to address. The fact that the underlying debts were incurred months after the divorce thus has no bearing on whether Deborah's obligation to hold Vincent harmless on those debts is dischargeable.

## C. Hold Harmless Agreement—the Mortgage Obligations

■ As stated above, the Separation Agreement granted Deborah exclusive use of the jointly-owned marital residence. In return, she agreed to be responsible for all taxes, utilities, insurance and mortgage obligations on the property and to hold Vin-

cent harmless on these liabilities. Deborah failed to abide by the terms of the Separation Agreement. Instead, she defaulted and Wells Fargo initiated foreclosure proceedings, naming both Deborah and Vincent as defendants and demanding judgment in the amount of $104,051 plus interest.

Deborah concedes that the mortgage debt to Wells Fargo "is a marital debt for which she must hold [Vincent] harmless" (Response at 3), but argues that in Ohio any deficiency judgment on property that has been used as a residence is only collectible for two years following the confirmation of the judicial sale of that property.[5] She asserts that Ohio Revised Code § 2329.08 "limit[s] ... [D]ebtor's obligation to hold [Vincent] harmless." Response at 3.

■ The extent of Deborah and Vincent's liability to the mortgage holders—Wells Fargo and Homecomings—is not at issue in this adversary proceeding. Rather, the debt involved in this case is Deborah's obligation under the Separation Agreement to indemnify and hold Vincent harmless for any obligations related to her failure to pay the mortgage or other expenses related to her occupancy of the residence. And it is clear that "a hold harmless agreement in a divorce decree

---

5. Section § 2329.08 of the Ohio Revised Code provides in relevant part:

Any judgment for money rendered in a court of record in this state upon any indebtedness which is secured or evidenced by a mortgage, or other instrument in the nature of a mortgage, on real property or any interest therein, upon which real property there has been located a dwelling or dwellings for not more than two families which has been used in whole or in part as a home or farm dwelling or which at any time was held as a homestead by the person who executed or assumed such mortgage or other instrument, or which has been held

by such person as a homesite, shall be unenforceable as to any deficiency remaining due thereon, after the expiration of two years from the date of the confirmation of any judicial sale of such property completed subsequent to the rendition of such judgment. Any execution issued upon such judgment, or any action or proceeding in aid of execution, or in the nature thereof, or to marshal liens, commenced prior to the expiration of such two year period, shall not be affected by this section.

Ohio Rev.Code Ann. § 2329.08 (LexisNexis 2005).

imposes liability upon the obligor for *all consequences* of his failure to pay." *Salerno v. Crawford (In re Crawford)*, 236 B.R. 673, 677 (Bankr.E.D.Ark.1999) (emphasis added). Here, Deborah had the opportunity to limit her liability under the hold harmless agreement either by refinancing the mortgage indebtedness or selling the property. Either alternative would have extinguished Vincent's liability on the debts owed to Wells Fargo and Homecomings. Having failed to comply with the obligations imposed by the Separation Agreement, she may not now avoid a nondischargeability judgment by asserting that the underlying mortgage obligations are limited by Ohio law.

In sum, Deborah's obligation to hold Vincent harmless with respect to the Wells Fargo and Homecomings mortgage indebtedness as well as the other obligations relating to the marital residence are nondischargeable. Whether Wells Fargo and/or Homecomings may enforce a deficiency judgment against Deborah and Vincent, or are precluded from doing so by virtue of the two-year time limitation imposed by Ohio Revised Code § 2329.08, is an issue that should be resolved by the state court that issued the judgment in the foreclosure action. Whatever the extent of Deborah and Vincent's liability to Wells Fargo and Homecomings may be, Deborah's obligation under the Separation Agreement to hold Vincent harmless on the mortgage and related indebtedness is a debt excepted from discharge by § 523(a)(15).

### IV. *Conclusion*

For these reasons, the Court concludes that Vincent is entitled to judgment as a matter of law on the second and third claims for relief set forth in his complaint. The Court shall enter a separate judgment providing that Deborah's obligation to hold Vincent harmless on the Chase credit card

debt and the mortgage obligations are excepted from discharge by 11 U.S.C. § 523(a)(15).

**IT IS SO ORDERED.**